IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAVID N. STANLEY,

     Plaintiff,

v.                                  No.  11-cv-1108 GBW/WPL

DONALD GALLEGOS, *et al.,*

     Defendants.

**ORDER GRANTING IN PART DEFENDANT OLONA'S
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendant Olona's Motion to Dismiss or

for Summary Judgment.  *Doc. 136.*  Having reviewed the motion, the attendant briefing,

(*docs. 149, 155),* and the relevant law, and being otherwise fully advised, the Court

construes the motion as one for summary judgment and will GRANT it in part.

**I.    BACKGROUND**

This case arises from the removal of a gate Plaintiff erected on Red Hill Road,[1]

which runs through portions of his property ("Stanley Ranch").  Red Hill Road leads to

the White Peak public lands, a popular hunting and wildlife area.  *Doc. 136*, Ex. A at 2,

¶ 6.

Defendant Ed Olona is an avid sportsman and former president of the New

Mexico Wildlife Federation, an organization that monitors issues and legislation

---

[1] Throughout the record, the parties refer to the road at issue alternatively as Red Hill Road, Ranch Road 2, and White Peak Road.  For purposes of this order, the Court will refer to this road as Red Hill Road.

regarding access to public lands.  *Doc. 136*, Ex. 2 at ¶ 1; *doc. 125*, Ex. B at 15:13-25.

Plaintiff claims that, on or about August 24, 2011, Defendant Olona and Defendant

Gallegos, who was serving as the District Attorney for the Eighth Judicial District of

New Mexico at the time, "entered onto the Stanley Ranch . . . without prior notice to or

consent of Plaintiff, and took action to open the gate on Red Hill Road."  *Doc. 21* ¶ 10.

Plaintiff also contends that Defendant Olona physically took part in opening the gate on

Red Hill Road on August 24, 2011.  *Doc. 149* at 3-4, ¶ D.  Defendant Gallegos again took

action, or caused others to take action, on September 10, 2011, to "enter[] onto the

Stanley Ranch and cut the lock on the chain across the cattle guard in order to open

access to Red Hill Road."  *Doc. 21* ¶ 12.  Plaintiff claims that Defendant Olona was

present on this occasion as well, and conspired with Defendant Gallegos to enter

Plaintiff's property and to open Red Hill Road to the public on both occasions.

Plaintiff brings claims against Defendant Olona for violations of his

constitutional rights under 42 U.S.C. § 1983, for violations of the New Mexico

Constitution, and for state law trespass.  He contends that Defendant Olona was not

acting as a "mere private citizen or bystander in this matter" because his actions were

"so intertwined and interrelated" with those of Defendant Gallegos that he "was acting

'under color of law.'"  *Doc. 149* at 2.

Defendant Olona filed the instant Motion to Dismiss or for Summary Judgment

on May 1, 2015, arguing that he is not a state actor subject to suit for violations of the

United States or New Mexico Constitutions.  *Doc. 136.*  Defendant Olona also argues that he is entitled to absolute witness immunity and moves to dismiss Plaintiff's trespass claim on the ground that he has not been convicted of criminal trespass. Plaintiff responded to the motion on June 15, 2015 (*doc. 149*), and briefing was complete on June 30, 2015 (*doc. 155*).

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires that a party seeking summary judgment demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment."  *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002) (quoting *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir. 1991)) (internal quotations omitted).

Summary judgment is proper only if a reasonable trier of fact could not return a verdict for the nonmoving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex*, 477 U.S. at 323).  Once the movant meets this burden, Rule 56(e) requires the non-moving party to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder

of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). All material facts set forth in the motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

The court must adhere to three principles when evaluating a motion for summary judgment. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 551–54 (1999). Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. However, if the non-moving party's story "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v.*

*Harris*, 550 U.S. 372, 380 (2007).  In the end, "to survive the . . . motion, [the non-movant] need only present evidence from which a jury might return a verdict in his favor."  *Id*. at 257.

### III.   UNDISPUTED FACTS

1. Plaintiff owns real property ("Stanley Ranch") located within Colfax and Mora Counties in northern New Mexico.  *Doc. 127* at 1, ¶ 1.[2]

2. Red Hill Road passes through Stanley Ranch.  *Doc. 127* at 1, ¶¶ 1-2.  The road "leads to the White Peaks area, a popular hunting and wildlife area in northeast New Mexico."  *Doc. 136*, Ex. A at 2, ¶ 6.  Plaintiff has impeded access to this area via Red Hill Road by placing a locked gate on the road.  *Doc. 115* at 3-4, ¶¶ 7, 13; *doc. 125* at 2-3, ¶A; *doc. 125* at 11, ¶7.[3]

3. Defendant Olona, a former president of the New Mexico Wildlife Federation—a private organization that monitors issues and legislation regarding access to public lands—contacted a number of public officials as part of an effort to open access to the White Peak public lands.  *Doc. 125*, Ex. B at 15:13-25.  *Doc. 149*, Ex. A at 18:1-20:17.

4. Defendant Olona is not himself a public official.  Apart from his employment with the New Mexico Boys' School, from which he retired in 1990, Defendant

---

[2] For some background and other clearly undisputed facts, the Court relies on other materials in the record.  *See* FED. R. CIV. P. 56 (c)(3).

[3] Plaintiff does not dispute that Red Hill Road leads to the White Peaks area, only that it is the only access to that area.

Olona has never been employed by the government of the United States, the

State of New Mexico, or any political subdivision thereof. *Doc. 136* at 4, ¶ 1; Ex. 2

¶¶ 1-2.

5.  After many unsuccessful attempts to convince public officials to open the White

Peak area, Defendant Olona contacted Defendant Gallegos, the elected District

Attorney for the Eighth Judicial District in the State of New Mexico, which

includes Colfax County. *Doc. 149*, Ex. A at 18:12-15. *Doc. 115*, Ex. 1 at 7:14-19

6.  Defendant Olona has never been employed by the Eighth Judicial District

Attorney's Office of the State of New Mexico, nor has he ever been compensated

financially for any work undertaken for the office. *Doc. 136* at 4, ¶ 2; Ex. 2 ¶ 3.

7.  Defendant Gallegos determined that Red Hill Road was a public road.[4] *Doc. 115*,

Ex. 1 at 37:9-12, 52:15-19, 109:6-9; *doc. 125*, Ex. A at 107:8-13. As early as

September 2002, he notified Plaintiff that he would be subject to criminal charges

if he placed a gate across the road. *Doc. 125*, Ex. C-4.

8.  On August 11, 2011, Plaintiff filed a Complaint to Quiet Title in state court

concerning his title to the Stanley Ranch and Red Hill Road. *Doc. 125* at 5, ¶ M.

Prior to the filing of this suit, Red Hill Road had never been adjudicated a public

or private road. *Doc. 125*, Ex. A at 168:1-9; *doc. 127* at 2, ¶ 6.

9.  Defendant Olona is listed as a witness in the state quiet title action, which is still

---

[4] Plaintiff disputes the accuracy and reasonableness of this opinion, but he does not dispute that Defendant Gallegos subjectively held it. *See doc. 125* at 11-13.

pending.  *Doc. 136* at 4, ¶4; Ex. 1.

10. At some point prior to August 2011, Plaintiff erected a metal gate that blocked
access to Red Hill Road.  He locked the gate with a chain and secured a barbed
wire fence across the cattle guard.  *Doc. 127* at 1, ¶ 2.

11. Defendant Gallegos determined that the obstruction Plaintiff had placed across
Red Hill Road was unlawful.  *Doc. 115*, Ex. 1 at 93:1-4, 98:13-19.  His position was
that the road needed to remain open at all times in order to allow public access to
the White Peak public lands.  *Doc. 115*, Ex. 1 at 120:2-121:8.

12. In determining that Red Hill Road was public, Defendant Gallegos reviewed
documents and maps submitted to him and relied on the research of others,
including Defendant Olona.  *E.g., doc. 115*, Ex. 1 at 147:11-149:12; 150:15-152:12.
The other individuals he spoke with include "Alvin Garcia, who was at the
Attorney General's Office at the time," individuals from Game & Fish, and
"some of the elders who told [him] about the uses of that road in generations
past."  *Doc. 115*, Ex. 1 at 147:11-149:12.[5]

13. Defendant Gallegos did not, however, conduct his own independent research.
*Doc. 125*, Ex. A at 159:13-19.  Nor did he receive any input from Plaintiff.  *Doc.*

---

[5] Plaintiff disputes the quality and relevance of the evidence reviewed by Defendant Gallegos.  *See doc.*
*125* at 11-13.  For example, he contends that the "'oral histories' on which Mr. Gallegos purportedly relied
significantly post-dated the applicable patents . . . were not specific with regard to the alleged route of the
road, nor did they discuss the actual routes allegedly used . . . ."  *Doc. 125* at 12.  While Plaintiff contends
that the evidence considered by Defendant Gallegos was essentially worthless, he does not dispute that
he considered it.

*115*, Ex. 1 at 161:22-24.

14. Defendant Olona provided Defendant Gallegos with information regarding the historical use of Red Hill Road. *Doc. 149* at 5, ¶ L.  Defendants Olona and Gallegos also exchanged emails regarding access to the White Peak area and the gate Plaintiff had placed across the road.  *Doc. 125*, Exs. C-15, C-17, C-18, C-19.

15. On August 24, 2011, Defendant Gallegos told Patrick Casias, the Sheriff of Colfax County, "that he [Gallegos] would be taking action to open the locked gate . . . ." *Doc. 40*, Ex. A ¶ 7; *see also doc. 125* at 3, ¶ D.  Consequently, Sheriff Casias sent Undersheriff Steve Marquez to Red Hill Road on August 24, 2011, to "keep the peace." *Doc. 136*, Ex. 3 ¶ 10.

16. On August 24, 2011, Defendant Olona led Defendant Gallegos to the location of the locked gate Plaintiff had erected on Red Hill Road.  Defendant Olona traveled to the location with a Colfax County Deputy Sheriff in an official vehicle. *Doc. 149* at 3, ¶ C.

17. Defendant Gallegos used bolt cutters to cut the lock on the gate at Red Hill Road. *Doc. 125*, Ex. A at 85:16-86:4.  With the help of others, he removed barbed wire from the fence and the T-posts on the cattle guard. *Doc. 125*, Ex. A at 86:5-16.

18. Defendant Gallegos was in charge of the opening of Red Hill Road on August 24, 2011. *Doc. 115*, Ex. 1 at 80:21-24.

19. In addition to Defendant Olona, Defendant Gallegos was accompanied by two

deputies from the Mora County Sheriff's Department, two from the Colfax County Sheriff's Department, and about eighteen private individuals. *Doc. 125*, Ex. A at 63:23-64:4; Ex. B at 50:20-23.

20. Some members of the public physically assisted in opening Red Hill Road by, for example, "get[ting] a post and put[ting] it to the side." *Doc. 115*, Ex. A at 81:3-4.

21. Defendant Olona documented the event by taking pictures. *Doc. 149* at 4, ¶ D.

22. A few weeks later, on September 10, 2011, Defendant Olona informed law enforcement that the gate at Red Hill Road had been relocked. *Doc. 149* at 4, ¶ E; *doc. 155* at 2-3, ¶ E.

23. Sheriff Casias sent Deputy Tony Aguirre to Red Hill Road to open the area to the public. *Doc. 136*, Ex. 3 ¶ 15.

24. Defendant Olona was present for the opening of the gate on September 10, 2011. *Doc. 149* at 3, ¶ A; *doc. 155* at 1, ¶ A. After the gate was reopened, he sent an email to Defendant Gallegos informing him of the actions taken by the Colfax County Sheriff's Office. *Doc. 149* at 4, ¶ G; *doc. 125*, Ex. C-30.

25. At all relevant times, Defendants Gallegos and Olona were aware of Plaintiff's position that Red Hill Road was a private road. *Doc. 149* at 5, ¶ J.

26. On both August 24, 2011, and September 10, 2011, there were "No Trespassing" signs posted near the gate. *Doc. 149* at 4-5, ¶ H.

27. No criminal complaint or other charge has ever been filed against Defendant

Olona for criminal trespass under N.M. STAT. ANN. § 30-14-1.1 (1983), for any

actions he took on August 24, 2011, or September 10, 2011.  *Doc. 136* at 5, ¶ 5; Ex.

2 ¶ 5.

28. Defendant Gallegos issued an undated statement regarding Red Hill Road on

official District Attorney letterhead and addressed it to "To Whom It May

Concern."  *Doc. 134*, Ex. B.  The statement provided that "Mr. Olona . . . and any

member of the public, were free to remove the obstruction and would not face

criminal charges as the road is clearly public . . . ."  *Id.*

## IV.  ANALYSIS

Defendant Olona moves for summary judgment on the grounds that he is not a

state actor and is not liable for statutory trespass.  In addition, he argues that he is

entitled to absolute witness immunity due to his involvement in the state quiet title

action.  For the following reasons, the Court concludes that Defendant Olona is not a

state actor, and is thus not subject to liability for violations of the United States or New

Mexico Constitutions.  The Court finds Defendant Olona's remaining arguments to be

without merit.

### A.  Defendant Olona Did Not Act Under Color of Law

Plaintiff brings claims against Defendant Olona for alleged constitutional

violations pursuant to 42 U.S.C. § 1983.  *See generally doc. 21.*  Defendant Olona argues

that Plaintiff fails to state plausible § 1983 claims because the alleged facts do not

support a finding that he acted under color of state law.

The Tenth Circuit has laid out four tests to determine whether a private party should be deemed a state actor in the context of § 1983: (a) the public function test, (b) the nexus test, (c) the symbiotic relationship test, and (d) the joint action test. *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). Whether state action exists is "a legal determination to be made by the court." *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1271 (10th Cir. 1989). Based on the undisputed facts viewed in the light most favorable to Plaintiff, Defendant Olona cannot be considered a state actor under any of these tests.

### 1.  Nexus Test

First, "under the nexus test, a plaintiff must demonstrate that 'there is a sufficiently close nexus' between the government and the challenged conduct such that the conduct 'may be fairly treated as that of the State itself.'" *Gallagher*, 49 F.3d at 1448 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action is found under this approach "only when [the state] has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice [of the private party] must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Merely availing oneself of state judicial procedures is insufficient to constitute state action. *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 n.21 (1982). Similarly, "a state official's mere approval of or acquiescence to the conduct of a private

party is insufficient to establish the nexus required for state action." *Gallagher,* 49 F.3d at 1450.

There is no indication in the record that Defendant Gallegos or the state of New Mexico in any way exercised coercive power over Defendant Olona or encouraged him to violate Plaintiff's federal rights by removing the gate in August or September 2011. To the contrary, Plaintiff consistently asserts that Defendant Olona was the one urging state actors to open up the White Peak area. Because Plaintiff has not alleged facts sufficient to support a "nexus" between Defendant Olona and the state of New Mexico, he fails to state a claim upon which relief can be granted under the nexus test.

### 2. *Symbiotic Relationship Test*

Next, the symbiotic relationship test applies where the state has "'so far insinuated itself into a position of interdependence' with a private party that 'it must be recognized as a joint participant in the challenged activity.'" *Gallagher*, 49 F.3d at 1451 (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)). This test involves situations in which a private party and the state have reached "a position of long-term interdependence," *Johnson v. Rodrigues*, 293 F.3d 1196, 1204 (10th Cir. 2002), which "confer[s] a variety of mutual benefits on each party," *Gallagher*, 49 F.3d at 1451. The Tenth Circuit has noted that "extensive state regulation, the receipt of substantial state funds, and the performance of important public functions do not necessarily establish the kind of symbiotic relationship between the government and a private entity that is

required for state action."  *Id.* at 1451.

Plaintiff's alleged facts fall exceedingly short of meeting this test.  He has plead no facts indicating that the state of New Mexico has insinuated itself into a position of long-term interdependence with Defendant Olona.  The only evidence Plaintiff offers of an established relationship between Defendants Olona and Gallegos is an exchange of emails that shows Defendant Olona's efforts to open access to the White Peak area. However, these communications in no way indicate that Defendant Gallegos received any advantage such that the two men profited from a mutually beneficial relationship. Therefore, Plaintiff fails to state a claim under the symbiotic relationship test.

### 3.  *Public Function Test*

The public function test consists of determining whether the state has delegated to a private party "a function 'traditionally exclusively reserved to the State.'"  *Id*. at 1456 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974)).  This standard is difficult to satisfy because, although "many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (quoting *Jackson*, 419 U.S. at 356).

Functions reserved exclusively to the state include, for example, the administering of elections, the operation of a company-owned town, and the management of a city park.  *Gallagher*, 49 F.3d at 1456 (citing cases).  On the other hand, actions of the type normally taken by law enforcement—such as providing security

functions or investigating a crime—are not exclusively reserved to the state.  *Id.* at 1457 (finding that "safeguarding public property" was not a public function where the property had been leased by a private company, and noting that "the mere fact that an individual's job involves the investigation of crime does not transform him into a government actor").

Plaintiff has not alleged that Defendant Olona was performing a traditional state function in August or September 2011 when the obstruction on Red Hill Road was removed, or when he communicated with state officials regarding access to the White Peak area.  Nor has Plaintiff alleged that Defendant Olona was delegated any function exclusively reserved to the state.  Contrary to Plaintiff's assertion that "Defendant Gallegos issued an 'Order' to Defendant Olona giving him the authority to remove any obstructions" at Red Hill Road, *doc. 149* at 5, ¶ K, Defendant Gallegos merely issued a statement indicating that he would exercise his discretion as District Attorney and decline to prosecute "*any* member of the public" who chose to remove the obstruction. Even if the letter established that Defendant Gallegos had actually delegated authority to remove the gate to Defendant Olona, Plaintiff has not established that doing so is a government function traditionally reserved to the state.

For the foregoing reasons, Plaintiff's Complaint fails to state a claim upon which relief can be granted under the public function test.

### 4. *Joint Action Test*

Plaintiff relies most heavily on the joint action test.  Under this test, "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Gallagher*, 49 F.3d at 1453.  However, the bar is quite high.  Joint action typically takes the form of a conspiracy, where "'both public and private actors share a common, unconstitutional goal.'" *Id.* at 1454 (quoting *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991)).  The actors "must share a specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action." *Id.* at 1455.  Since *Gallagher*, the Tenth Circuit has recognized that the "mere lack of concern or even recklessness for causing the violation of others' constitutional rights [does] not . . . rise to the level of establishing . . . liability under section 1983." *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 597 (10th Cir. 1999).

Other circuits have held that the objective of the conspiracy must have been to violate the plaintiff's constitutional rights—not simply to take actions that *resulted* in a violation of those rights.  For example, the Seventh Circuit requires a showing that the private and public actors "reached an understanding to deny the plaintiff[] [of his] constitutional rights." *Cunningham*, 924 F.2d at 107 (citing *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 135 (7th Cir. 1985)).  Similarly, the Ninth Circuit demands that the plaintiff show "a 'meeting of the minds' to violate constitutional rights . . . .  [The actors

must have] knowingly attempt[ed] to accomplish [a] wrongful purpose." *Fonda v. Gray*, 707 F.2d 435, 438-39 (9th Cir. 1983).  This Court agrees that, to make a private citizen liable pursuant to § 1983 as a state actor under the joint action test, the private citizen must have the specific intent to violate the plaintiff's constitutional rights.

Plaintiff contends that Defendants Olona and Gallegos "willfully and knowingly worked together from start to finish to deprive Mr. Stanley of his . . . due process rights by opening up [Red Hill Road] to the public without notice and an opportunity to be heard." *Doc. 149* at 7-8.  While the record is replete with evidence that Defendant Olona wished to open Red Hill Road to the public, there is nothing that indicates his goal was to deprive Plaintiff of due process.  As evidence of conspiracy, Plaintiff points to an email from Defendant Olona stating "We have to deal with David Stanley to have him prove that the Red Hills Road was his." *Doc. 125*, Ex. C-15.  Far from evidencing an intent to deny Plaintiff due process, however, this email actually suggests that Defendant Olona anticipated that Plaintiff would be given an opportunity to state his position—that is, notice and an opportunity to be heard.  Even if, as Plaintiff contends, Defendant Olona improperly opined that the burden was on the landowner, this alleged mistake is not evidence that Defendant Olona was conspiring to knowingly deprive Plaintiff of his due process rights.

Moreover, the Court will not find Defendant Olona to be a state actor where he simply lobbied Defendant Gallegos to take action regarding what he believed to be

illegal activity—Plaintiff's blocking of a public road. Indeed, Defendant Olona specifically testified that he believed Red Hill Road was public. *Doc. 125*, Ex. B at 23:24-25:1. A private actor will not be found liable under § 1983 when he has done "nothing more than report what he deemed to be criminal activity to the proper authorities." *Lee v. Town of Estes Park, Colo.*, 820 F.2d 1112, 1115 (10th Cir. 1987). This is true even if the individual is "insistent" or is actively lobbying the public official. *Id.; see also Mbaku v. Bank of Am.*, No. 12-190, 2014 WL 4099313, at *9 (D. Colo. Aug. 20, 2014) (citing *Sheikh v. Rabin*, 565 F. App'x 512, at *6 (7th Cir. 2014)) ("[A] private citizen may lobby the government and urge the passage of legislation without becoming a state actor.").

For example, in *Lee v. Town of Estes Park, Colorado*, the Tenth Circuit found that the defendant was not acting under color of law when he made a citizen's arrest of the plaintiff after witnessing what he believed to be looting, and then subsequently transported the plaintiff to the local police station. 820 F.2d at 1114. The defendant reported what he had seen to a police officer, who, based on that information, decided to charge the plaintiff with disorderly conduct. *Id.* In finding the private defendant not liable, the Tenth Circuit noted that "the mere furnishing of information to police officers who take action thereon does not constitute joint action" because ultimately, it is the public official who makes the final decision of whether to bring charges or take any further action. *Id.* at 1115.

Similarly, in *Cruz v. Donnelly*, the Third Circuit held that a manager of a store

was not liable under section 1983 where he accused the plaintiff of shoplifting and

ordered the police to search the plaintiff's person, at which time the officers conducted a

full strip search of the plaintiff.  727 F.2d 79, 80 (3d Cir. 1984).  The court refused to find

joint action absent "evidence of a pre-arranged plan by which the police *substituted the*

*judgment of private parties for their own official authority*."  *Id.* (emphasis added).  The

Third Circuit stated that the "critical issue . . . is whether the state, through its agents or

laws, has established a formal procedure or working relationship that drapes private

actors with the power of the state."  *Id.* at 82.

Both *Lee* and *Cruz* illustrate that, even if Defendant Gallegos acted on the

information he received from Defendant Olona "without question or independent

investigation," *doc. 149* at 12, as Plaintiff contends, Defendant Olona is not liable as a

state actor because Defendant Gallegos retained the ultimate decisionmaking authority

over whether to act.[6]  Unless Defendant Olona knowingly lied about the information he

provided Defendant Gallegos or somehow prevented Gallegos from investigating or

exercising his own judgment,[7] Defendant Olona cannot be held responsible for

Defendant Gallegos' alleged failure to do so.

Defendant Gallegos testified that he did not, however, rely exclusively on

information from Defendant Olona in determining that Red Hill Road was public.

Defendant Gallegos spoke with at least "four or five people," including "Alvin Garcia,

---

[6] Indeed, many other public officials had refused to act notwithstanding Plaintiff's lobbying efforts.  *See doc. 149* at 8.

[7] Plaintiff makes neither allegation in his Complaint or otherwise.

who was at the Attorney General's Office at the time," individuals from Game & Fish, and "some of the elders who told [him] about the uses of that road in generations past." *Doc. 115*, Ex. 1 at 147:11-149:12. Because he drew on a variety of sources, Defendant Gallegos cannot be said to have substituted Defendant Olona's judgment for his own authority.

Lastly, there is no indication that Defendants Gallegos and Olona had "established a formal . . . working relationship that drape[d] [Defendant Olona] with the power of the state." *Cruz,* 727 F.2d at 82. Although Defendants Olona and Gallegos exchanged several emails regarding Red Hill Road, the emails do not establish that Defendant Gallegos "draped" Defendant Olona with the power of the state. Nor does the memo issued by Defendant Gallegos stating that "Mr. Olona . . . and any member of the public, were free to remove the obstruction [on Red Hill Road] and would not face criminal charges." *Doc. 134*, Ex. B. In issuing this memo, Defendant Gallegos did not bequeath his authority or the authority of the state. He simply preemptively communicated to all members of the public that he, in his prosecutorial discretion as District Attorney, would decline to prosecute anyone who removed obstructions from Red Hill Road.

For the foregoing reasons, the Court finds that Defendant Olona did not conspire with Defendant Gallegos with the goal of depriving Plaintiff of his constitutional rights. Thus, Defendant Olona was not acting "under color of law" under any of the four tests,

and Plaintiff fails to state a claim against him for violations of his constitutional rights

under section 1983.

**B.  Plaintiff's State Constitutional Claims Fail Because Defendant Olona is Not a State Actor**

Because the Court finds that Defendant Olona is not a state actor subject to suit

under 42 U.S.C. § 1983, he is likewise not subject to suit for alleged violations of the

New Mexico Constitution.  *See R & R Deli, Inc. v. Santa Ana Star Casino*, 128 P.3d 513, 519

(N.M. Ct. App. 2005) (holding defendant "is not a state actor that is bound by . . . the

New Mexico Constitution . . . ."); *State v. Snyder*, 967 P.2d 843, 846 (N.M. Ct. App. 1998)

(agreeing that the New Mexico Constitution does not apply where "no state actor is

involved").

**C.  No Conviction is Required for Plaintiff's Statutory Trespass Claim**

Plaintiff next alleges that Defendant Olona trespassed on his property in

violation of N.M. STAT. ANN. § 30-14-1.1(D) (1983).  Defendant Olona insists that

Plaintiff's claim fails because "civil damages may be available [only] where a defendant

has been <u>convicted</u> of criminal trespass . . . ."  *Doc. 136* at 9 (emphasis in original).  The

Court finds this argument unconvincing and concludes that a conviction is not a

necessary element of Plaintiff's statutory trespass claim.

Section 30-14-1.1(D) provides "civil damages" for trespass:

> In the event any person enters upon the lands of another without prior
> permission and injures, damages or destroys any part of the realty or its
> improvements, including buildings, structures, trees, shrubs or other

> natural features, he shall be liable to the owner, lessee or person in lawful possession for damages in an amount equal to double the amount of the appraised value of the damage of the property injured or destroyed.

N.M. STAT. ANN. § 30-14-1.1(D) (1978) (emphasis added).  Although, as Defendant points out, this section falls within the New Mexico Criminal Code, there is no other indication that a conviction is a necessary element of a civil statutory trespass claim.  In contrast, the only other provision of the New Mexico Criminal Code that uses the term "civil damages," section 30-23-7, expressly includes this requirement.  That section, titled "Civil damages for engaging in illegal acts," states:

> In addition to any criminal penalties imposed by Section 23-6,[8] a public officer or public employee *convicted of violating such section* shall be liable for anything of value received by him to the department of the state or political subdivision in whose employ or service he was at the time of such violation of that section . . . .

N.M. STAT. ANN. § 30-23-7 (1978) (emphasis added).

As is plain from the statutory text, the legislature explicitly required a conviction in order to recover civil damages under section 30-23-7.  It is therefore reasonable to conclude that the legislature would have included this requirement in section 30-14-1.1(D) as well, had that been its intention.  Because it did not, the Court finds that the legislature did not intend to require a conviction in order to recover for statutory trespass under section 30-14-1.1(D).  *See Elwell v. Oklahoma ex rel. Bd of Regents of Univ. of Okla.*, 693 F.3d 1303, 1309 (10th Cir. 2012) ("'Where Congress includes particular

---

[8] Section 30-23-6 is "Unlawful interest in a public contract."

language in one section of a statute but omits it in another section of the same Act, it is

generally presumed that Congress acts intentionally and purposely in the disparate

inclusion or exclusion.'") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Defendant Olona cites to *Hartman v. Texaco, Inc.*, 937 P.2d 979 (N.M. Ct. App.

1997), in support of his argument that a criminal conviction is required to recover under

section 30-14-1.1(D).  In *Hartman*, the plaintiffs brought claims against an oil company

for common law trespass, civil statutory trespass, and intentional private nuisance for

damage the company allegedly caused to their well.  The trial court entered judgment

for the plaintiffs following a jury verdict finding the oil company liable for, *inter alia*,

statutory trespass under section 30-14-1.1(D).  The Court of Appeals of New Mexico

reversed the judgment on the basis that section 30-14-1.1(D) did not apply to subsurface

trespass.  Nowhere in the opinion did the court state, or even intimate, that statutory

trespass required a criminal conviction.  In fact, the court performed a detailed analysis

of the statute's language and history in determining that the legislature was concerned

only with trespass on the surface of the land, but did not once suggest that a conviction

was necessary.[9]  In light of the foregoing, the Court concludes that *Hartman* provides no

support for Defendant Olona's position.

Defendant Olona also argues, quite broadly, that "there is no such thing" as a

---

[9] Defendant Olona argues that, because "[s]ubsection D . . . creates a civil remedy for the preceding
subsection," and that preceding subsection deals exclusively with criminal trespass, a criminal conviction
is required.  937 P.2d at 982.  The Court finds this reasoning unpersuasive.  The legislature is free to create
a civil cause of action for criminal conduct without requiring that the conduct be established by a
conviction.

civil trespass statue because "[c]ivil trespass is traditionally a common law cause of action." *Doc. 155* at 11.  This argument is without merit.  Contrary to this blanket assertion, there are a number of states that provide for both a common law and a statutory trespass claim.  *See, e.g., Noonan v. Thurston Cnty.*, 168 Wash. App. 1024 (2012) (considering claims of both common law and statutory trespass); *Boylan v. Fifty Eight LLC*, 808 N.W.2d 277, 286-87 (Mich. Ct. App. 2010) (comparing common law and statutory trespass); *Ridgway v. TTnT Dev. Corp.*, 126 S.W.3d 807, 819 (Mo. Ct. App. 2000) ("A lawsuit brought to recover damages for either common law or statutory trespass is not an unusual type of case . . . .").  Most importantly, the New Mexico Court of Appeals also addressed the interaction of the two causes of action in *Hartman*, noting that "Section 30-14-1.1(D) provides an additional remedy in certain statutorily defined circumstances [which] are not necessarily as expansive as the full reach of the common law."  937 P.2d at 983.

### D. Plaintiff Likely Fails to State a Statutory Trespass Claim Because the Record Lacks Evidence of Required Element

Plaintiff's statutory trespass claim appears to fail for a different reason.  As explained above, Defendant Olona is not liable for the actions of the public officials (such as Defendant Gallegos and Deputy Aguirre) under section 1983 or the state constitution.  Section 31-14-1.1(D) provides for liability "[i]n the event any person enters upon the lands of another without prior permission *and injures, damages or destroys any part of the realty or its improvements . . . .*"  N.M. STAT. ANN. § 30-14-1.1(D) (1978)

(emphasis added).  The plain statutory language appears to only create liability for injury, damage, or destruction personally caused by the defendant.

The record reveals no evidence that Defendant Olona personally "injure[d], damage[d] or destroy[ed]" any of Plaintiff's real or personal property.  Defendant Gallegos testified that Defendant Olona did not take part in the removal of the T-posts across Red Hill Road.  Defendant Olona testified that he had no personal recollection of who removed the T-posts from the cattle guard.  *Doc. 149*, Ex. A at 66:4-7.  Defendant Gallegos similarly testified that only himself and one other individual, who was not Defendant Olona, removed the T-posts, and denied that Defendant Olona "assisted [him] in taking the August 24th actions."  *Doc. 149*, Ex. B at 86:9-89:1.  Against this evidence, Plaintiff submits a single photograph of Defendant Olona present at Red Hill Road on August 24, 2011.  *Doc. 149*, Ex. B-M.  In the picture, Defendant Olona appears to be pointing at a T-post or touching a T-post.

Standing alone, the photo is insufficient to create a reasonable inference that Defendant Olona actually damaged Plaintiff's property.  Absent a showing of injury, damage or destruction by Defendant Olona, Plaintiff's claim would fail.  However, because Defendant Olona did not raise this argument in his motion, the Court will, in accordance with Federal Rule of Civil Procedure 56(f), provide Plaintiff an opportunity to respond before issuing a final ruling granting summary judgment on his statutory trespass claim against Defendant Olona.  FED. R. CIV. P. 56(f) ("After giving notice and

reasonable amount of time to respond, the court may: . . . (2) grant the motion on grounds not raised by a party . . . .").[10]

### E.  Defendant Olona is Not Entitled to Absolute Witness Immunity

Finally, Defendant Olona's argument that he is entitled to absolute immunity because he is named as a prospective witness in the state quiet title action is without merit, as this immunity only protects "parties and witnesses from *subsequent* damages liability for their testimony in judicial proceedings." *Briscoe v. LaHue*, 460 U.S. 325, 330 (1983) (emphasis added); *see also Doe v. Boland*, 630 F.3d 491, 499 (7th Cir. 2011) (witness immunity "is limited to in-court statements"); *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) ("The simple fact that acts may ultimately lead to witness testimony does not serve to cloak these actions with absolute testimonial immunity . . . .  [I]mmunity does not relate backwards to protect [an individual] for any activities he allegedly engaged in prior to taking the witness stand . . . .") (internal quotations omitted).

### V.  Conclusion

For the foregoing reasons, it is hereby ordered that Defendant Olona's Motion to Dismiss or for Summary Judgment (*doc. 136*) is GRANTED in part, and Plaintiff's section 1983 claims and state constitutional claims against Defendant Olona are hereby dismissed.

---

[10] The Court recognizes that Defendant Olona raised a related argument contending that Plaintiff failed to state a claim of trespass because he did "not allege[] that Defendant Olona ever entered his private property." *Doc. 155* at 12.  However, this argument was raised for the first time in the reply brief. *See, e.g., United States v. Beebe*, 807 F. Supp. 2d 1045, 1054 (D.N.M. 2011).

IT IS FURTHER ORDERED that Plaintiff shall have until **September 8, 2015**, to file a brief addressing why his statutory trespass claim against Defendant Olona should not be dismissed for failure to establish damages.  Plaintiff shall provide and cite to any relevant evidence on this point pursuant to Fed. R. Civ. P. 56(c).  Should he wish to do so, Defendant Olona may file a response thereto within fourteen days of Plaintiff's filing.

IT IS SO ORDERED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**