IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAVID N. STANLEY,

    Plaintiff,

v.                                                         Civ. No. 11-1108 GBW/JHR

DONALD GALLEGOS, *et al.*,

    Defendants.

## ORDER DISMISSING PLAINTIFF'S STATUTORY TRESPASS CLAIM AGAINST DEFENDANT OLONA

This matter comes before the Court on Plaintiff's Brief Regarding Trespass Claim Against Defendant Olona (*doc. 168*) and Defendant Olona's Response (*doc. 170*). Plaintiff and Defendant Olona filed these supplemental briefs pursuant to the Court's Order Granting in Part Defendant Olona's Motion to Dismiss or for Summary Judgment. *Doc. 166*. In that Order, the Court noted *sua sponte* that dismissal of Plaintiff's statutory trespass claim against Defendant Olona was apparently warranted, due to a lack of record evidence to support the damages element of the relevant statute. *See id.* at 23-24; *see also* N.M.S.A. § 30-14-1.1(D). However, because Defendant Olona never raised that argument in his Motion to Dismiss or for Summary Judgment (*doc. 136*), the Court allowed Plaintiff an opportunity to file a supplemental brief on the issue in accordance with Fed. R. Civ. P. 56(f).

Thereafter, Plaintiff and Defendant Olona both filed supplemental briefs on the issue. *Docs. 168, 170*. Having reviewed the briefing and being otherwise fully advised, the Court now DISMISSES Plaintiff's statutory trespass claim against Defendant Olona WITH PREJUDICE.

I. **BACKGROUND**

Plaintiff's statutory trespass claim against Defendant Olona stems from the August 24 and September 10, 2011 removals of a gate that Plaintiff placed across a road traversing Plaintiff's property. Defendant Olona was present during the August 24 removal, along with several other individuals including Defendant Donald Gallegos, who is the District Attorney for the Eighth Judicial District of New Mexico, officers from the Mora and Colfax County Sheriff's Departments, and other civilians. *Doc. 125* at 1-2; *see also doc. 149-1* at 4-5, Olona Dep. 48:3-50:23. To open the road to public access on that occasion, Defendant Gallegos used bolt cutters to cut the locked chain securing the gate; additionally, he and other members of the group[1] removed a barbed-wire fence and T-posts set up at the cattle crossing. *Doc. 21* at 3; *doc. 160-1* at 18; *doc. 125-1* at 10-12, Gallegos Dep. 72:12-73:24; 82:1-86:18. According to a letter Defendant Gallegos wrote to Plaintiff two days later, the gate was then re-secured with wire, and the T-posts and

---

[1] It is not clearly established in the record which members of the group removed the fence and T-posts. However, based on the Court's review of the photographs Plaintiff labeled and included in the record, the people identified by Plaintiff in the photos as Defendant Gallegos, Defendant Olona, Eddie Trujillo, Max Trujillo, Colfax County Deputy Marquez, Mora County Deputy Martinez, and "Public 2" are those who are depicted standing near or touching the gate, fence, and/or T-posts on August 24, 2011. *See docs. 125-5* at 2-4; *125-6* at 4; *125-7* at 3; *149-3* at 5-6; *56-6*; *56-8*; *56-9*.

barbed-wire fence were left resting against a tree.  *Doc. 160-1 at 18; see also doc. 149-1* at 8, Olona Dep. 68:3-7.

Plaintiff thereafter restored the locked gate across the road, but a Colfax County Sheriff's Deputy removed it again on September 10, 2011.  *Doc. 21* at 3-4.  Defendant Olona was present on that occasion as well, and took photographs, which he sent to Defendant Gallegos.  *See doc. 149-3* at 9.

The Court will not recount the entire extensive procedural history of this case here.  As pertinent to this Order, the Court dismissed Plaintiff's § 1983 and state constitutional claims against Defendant Olona on August 25, 2015.  *Doc. 166*.  However, Plaintiff's state-law statutory trespass claim against Defendant Olona remained intact, pending supplemental briefing.  *Id.* at 23-24.  That supplemental briefing was complete on September 10, 2015.  *Docs. 168, 170*.  Due to the September 18, 2015 interlocutory appeal of the Court's qualified immunity ruling regarding Defendant Gallegos, the statutory trespass claim went unaddressed until the Tenth Circuit remanded the case for further proceedings on June 7, 2017.  *See doc. 191*.

II.     **LEGAL STANDARD**

The Court raised this issue in the context of Defendant Olona's summary judgment motion, and allowed supplemental briefing pursuant to Rule 56(f).  *See doc. 166* at 24-25; *see also* Fed. R. Civ. P. 56(f)(2).  Therefore, the Court's analysis will proceed

according to the typical standard applicable to summary judgment motions under Rule 56.

Under Federal Rule of Civil Procedure 56(f), the Court may grant summary judgment "on grounds not raised by a party," but only "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(2). Though courts "generally don't favor the granting of summary judgment *sua sponte*, a district court may do so if the losing party was on notice that she had to come forward with all of her evidence." *Johnson v. Weld Cty.*, 594 F.3d 1202, 1214 (10th Cir. 2010) (quoting *Scull v. New Mexico*, 236 F.3d 588, 600 (10th Cir. 2000)) (internal quotation marks and alterations omitted). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. "In such a situation, there can be no 'genuine issue as to any material fact,'" and "[t]he moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322-23 (quoting Fed. R. Civ. P. 56(a)).

The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex*, 477 U.S. at 323). Once the movant

meets this burden, Rule 56(e) requires the non-moving party to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted).

The court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue of material fact exists, requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. In so doing, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 551–54 (1999). Additionally, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. However, if the non-moving party's story "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In the end, "to survive the . . . motion, [the non-movant] need only present evidence from which a jury might return a verdict in his favor." *Id*. at 257.

### III.  ANALYSIS

Plaintiff brings his statutory trespass claim against Defendant Olona pursuant to N.M.S.A. § 30-14-1.1(D). *Doc. 21* at 9.  That statute provides:

> In the event any person enters upon the lands of another without prior permission and injures, damages or destroys any part of the realty or its improvements, including buildings, structures, trees, shrubs or other natural features, he shall be liable to the owner, lessee or person in lawful possession for damages in an amount equal to double the amount of the appraised value of the damage of the property injured or destroyed.

*Id.* As the Court noted in its earlier Order, the plain statutory language appears to create liability only where a defendant has personally caused injury, damage, or destruction to Plaintiff's realty or its improvements. *See doc. 166* at 24.  Yet there is no record evidence that Defendant Olona personally injured, damaged, or destroyed Plaintiff's property.  In fact, Defendant Gallegos testified during his deposition that he personally cut the lock on the chained gate with a pair of bolt cutters, that his employee Tomás Trujillo removed the barbed-wire fence, and that he and Mr. Trujillo are the only people he recalls being involved in the removal of the T-posts. *See doc. 125-1* at 11-12, Gallegos Dep. 82:1-86:18; 87:15-89:1.  Consistent with that testimony, Defendant Gallegos formally denied Plaintiff's Request for Admission No. 5, which asked him to "admit that Defendant Ed Olona assisted you in taking the August 24th actions." *Doc. 56-19* at 2.  Defendant Olona testified during his deposition that he had no recollection of who removed the T-posts, and that he "didn't think [he] would handle the T-bar." *Doc. 149-1* at 8, Olona Dep. 66:4-7; 64:16-19.

Numerous photographs were taken to document the gate removals on both occasions. *See docs. 125-4 at 4-5; 125-5 at 1, 5; 125-6 at 1, 4; see also docs. 56-2, 56-3, 56-4, 56-5, 56-6, 56-8, 56-9, 56-10, 56-12, 56-13, 149-3 at 2, 4-6*.[2] Of these, Plaintiff has identified only one photograph which potentially depicts Defendant Olona involved in the gate removal on August 24, 2011.[3] *See doc. 149-3 at 6*. In the photograph, Defendant Olona is bending or crouching down on the cattle guard where the barbed-wire fence and T-posts were located, while another man, crouching while holding a T-post perpendicular to the ground, faces him. *Id.* The barbed wire fence remains intact between the two men, with at least two visible T-posts still in a vertical position holding the fence upright. *Id.* Although the photograph is grainy, Defendant Olona appears to be reaching toward the T-post in the other man's hand, and either touching or pointing to it. It is also possible he is touching a pole next to the post, or pointing to something else. *Id.*

As explained in the Court's earlier Order, this photograph, standing alone, is insufficient to establish a material dispute as to whether Defendant Olona personally "injure[d], damage[d] or destroy[ed]" Plaintiff's property, as would be necessary to meet the damages element of the statutory trespass claim at trial. N.M.S.A. § 30-14-

---

[2] Many of the photographs contained in the record are duplicates of other exhibits. However, the Court has taken care to exclude any duplicative exhibits from these citations.

[3] Three other photos taken on August 24, 2011 show (1) Defendant Olona standing in a group of men near a parked vehicle out of view of the gate, *doc. 149-3 at 2*; (2) Defendant Olona in an open, grassy area apparently taking photographs from a distance, *doc. 149-3 at 4*; and (3) Defendant Olona standing in a group of men near the fence. *Doc. 56-3*. There are no photos in the record from the September 10 removal which depict Defendant Olona. *See docs. 56-10, 56-11, 56-12, 56-13*.

1.1(D). It is not clear from the photograph whether Defendant Olona even touched any piece of the chain, wire fence, or posts which were removed, let alone damaged them. Without more, there is insufficient evidence for a reasonable jury to find in Plaintiff's favor on the damages element.

In his supplemental briefing, however, Plaintiff points to two other pieces of record evidence to support the damages element of his claim. First, Plaintiff argues that Defendant Olona "admitted that he 'assisted' in removing Plaintiff's fence T-posts when he positioned himself at the foot of the cattle guard on Plaintiff's property." *Doc. 168* at 2 (citing *doc. 168-1*, Olona Dep. 64:1-4). Second, Plaintiff relies on the language Defendant Olona used in his email to Defendant Gallegos regarding the September 10 removal. In that email, Defendant Olona wrote, "we were in the process of unlocking the gate . . . ." *Doc. 168* at 2 (quoting *doc. 149-3* at 9).

The Court is unpersuaded that this evidence suffices to create a genuine, triable issue of material fact as to the damages element, such that a reasonable jury could return a verdict for Plaintiff on his statutory trespass claim against Defendant Olona. *See Liberty Lobby*, 477 U.S. at 248. First, the relevant excerpt of Defendant Olona's deposition on which Plaintiff relies involves a photograph which depicts a sheriff's deputy apparently cutting the barbed-wire fence with wire cutters on August 24, 2011. *Doc. 168-1* at 2, Olona Dep. 62:23-63:17. Defendant Olona's testimony regarding that photograph is as follows:

8

Q: So again, based on your recollection, what was done to the cattle guard here?
. . .
A. The T-posts were pulled out from the cattle guard.
Q. Okay. And were you involved in that at all?
. . .
A. The only thing I was involved in is being present. And at one point, I did assist right at the foot of the cattle guard there for some reason. I don't recall.

*Id.* at 63:18-64:4.

Following this exchange, Defendant Olona was presented with the photograph described above, in which he is crouching on the cattle guard with another man and possibly touching a T-post in the other man's hand. When asked what he was doing in that photograph, he stated "I don't recall what I was doing there." *Id.* at 64:14-15. The deposing attorney continued:

Q. Is it correct that you're handling one of the T-posts?
. . .
A. I don't think I would handle the T-bar. My hand would be around the pole. The T-bar that he's got in his hand, I don't believe – I don't know what we were picking up or what.
Q. So again, did you personally take any actions to either remove the barbed wire fence or remove the T-posts from the cattle guard?
. . .
A. I don't believe I assisted.
. . .
Q. Did you take any physical actions to remove the barbed wire?
. . .
A. No, I don't recall assisting.
Q. And were the T-posts removed from the cattle guard?
A. Yes.
Q. And did you take any physical actions to remove the T-posts?
. . .
A. No.

9

*Id.* at 64:16-65:3; 65:14-24. Plaintiff relies on Defendant Olona's statement that, "at one point," he "did assist right at the foot of the cattle guard there for some reason" to support his argument that there is sufficient record evidence to create a triable issue as to the damages element. But in so doing, he takes the statement out of context of Defendant Olona's immediately subsequent testimony, where he answered "No" to the direct inquiries about whether he took any physical actions to remove the barbed wire or T-posts. *See id.*

Second, Plaintiff points to Defendant Olona's September 12, 2011 email to Defendant Gallegos regarding the September 10 removal of the gate (*doc. 149-3* at 9) in an attempt to show that there is a triable issue as to whether Defendant Olona committed statutory trespass on that date. *Doc. 168* at 2. The full text of that email is as follows:

> Dear Donald,
>
> These are the pictures of the gate before and after we got Sheriff[']s Deputy Tony Aguirre to unlock the gate on 9/10/11. This was done after your trip on 8/23/11 [sic] along with the Sheriff[']s Deputies from Mora and Colfax Counties to open the gate initially. The gate was locked by one of [Plaintiff's] employees sometimes between the dates 9/5 thru 9/9. This is a blatant disregard by [Plaintiff] of your order to remove and leave the gate unlocked. While we were in the process of unlocking the gate, my son Ed overheard the conversation between [one of Plaintiff's] employee[s], Greg Faught and a female, who was relaying a message to and from ranch manager Leslie[. T]he female kept relaying the message that if anyone crossed the fence they would be trespassing, and that it was in court. Ed said it sounded like there may[ ]be further intentions to lock the gate again by the ranch.

10

>Thanks
>Ed.

*Doc. 149-3* at 9.  The very first sentence of this email makes clear that Sheriff's Deputy Tony Aguirre unlocked the gate on September 10, 2011.  Other objective record evidence further establishes that Deputy Aguirre, and not Defendant Olona, unlocked the gate on that date.  According to an affidavit filed by Plaintiff's counsel John Hays, Defendant Olona provided Plaintiff with the photographs taken on September 10 that are referenced in Defendant Olona's email to Defendant Gallegos.  *Doc. 56* at 2.  Those four photographs are attached to the affidavit.  *Docs. 56-10, 56-11, 56-12, 56-13*.  None of these photographs shows Defendant Olona involved in the gate removal, and one clearly depicts Deputy Aguirre using bolt cutters to cut the chain securing the gate.  *Doc. 56-10*.

Moreover, Colfax County Sheriff Patrick Casias (a former Defendant in this litigation) filed an affidavit in this matter in conjunction with his motion for summary judgment.  *See doc. 40*, Ex. A.  In his affidavit, Sheriff Casias stated that Defendant Olona contacted him by phone on September 10, 2011, to notify him that Plaintiff's gate had been locked again.  *Id.* at 3.  Accordingly, Sheriff Casias explained that he "sent Colfax County Deputy Tony Aguirre to Red Hill Road on September 10, 2011 to re-establish public access to the White Peaks area."  *Id.*  Deputy Aguirre prepared a report of what transpired on that date, and Sheriff Casias testifies in his affidavit that based on his

11

review of that report, "on September 10, 2011, Deputy Aguirre cut the chain/lock on the gate, thereby opening the gate across the cattle guard on Red Hill Road and re-permitting access to the White Peaks area." *Id.* Therefore, while the evidence establishes Defendant Olona's presence on both occasions, there is no evidence to support that he personally damaged, injured, or destroyed any realty or improvements on Plaintiff's property, as would be necessary for Plaintiff to prevail at trial on his statutory trespass claim against Defendant Olona.

In sum, even viewing the facts in the light most favorable to Plaintiff, Plaintiff has identified no witness testimony and no photographic or other evidence of record that Defendant Olona personally took any physical actions to dismantle Plaintiff's barbed-wire fencing, T-posts, or the chain securing Plaintiff's gate on either occasion that the gate was opened. Defendant Olona is therefore entitled to summary judgment on Plaintiff's statutory trespass claim pursuant to N.M.S.A. § 30-14-1.1(D).

The Court will briefly address two other arguments in Plaintiff's supplemental briefing. First, Plaintiff asks that the Court preserve his claim for injunctive relief against future trespasses by Defendant Olona, even though N.M.S.A. § 30-14-1.1(D) does not provide for injunctive relief. *Doc. 168* at 3-4. Plaintiff argues that his First Amended Complaint meets the pleading standard to state a claim for common law trespass against Defendant Olona in addition to his statutory trespass claim, and thus the Court should find that his prayer for injunctive relief contemplates enjoining future

common law trespass as well.  *Id.* at 3.  In the alternative, Plaintiff asks that the Court grant him leave to amend his First Amended Complaint to more clearly state a claim for common law trespass, such that Defendant Olona could be enjoined from future common law trespasses.  *Id.* at 3-4.

In response, Defendant Olona argues that allowing such an amendment would prejudice him, and that it would be futile because Plaintiff has failed to establish that Defendant Olona entered onto Plaintiff's private land.  *Doc. 170 at 6-7.*  The Court finds that Plaintiff's argument fails for a different reason.  Namely, injunctions are granted to prevent irreparable injury for which there is "no adequate and complete remedy at law."  *City of Las Cruces v. Rio Grande Gas Co.*, 431 P.2d 492, 494 (N.M. 1967).  Injunctive relief is typically not available for a claim of simple trespass, unless "the nature and frequency of the trespasses are such as to prevent or threaten the substantial enjoyment of the rights of possession and property in land."  4 Barry A. Lindahl, <u>Modern Tort Law: Liability and Litigation</u> § 38:17.50 (2d ed. 2017).  Consistent with this general rule, the Supreme Court of New Mexico has explained that where an interference with a plaintiff's property "is of a continuous nature, the constant recurrence of which renders a remedy at law inadequate, except by a multiplicity of suits, then a sufficient ground for relief by injunction is afforded."  *Kennedy v. Bond*, 460 P.2d 809, 813 (N.M. 1969).

Plaintiff has made no such showing of an inadequate remedy at law here, as he has made no showing of continuous or recurring trespass on land established as

13

private. To elucidate, it is helpful to turn to the allegations set forth in the First Amended Complaint. Plaintiff's injunctive relief request specifically asks the Court to:

> enjoin[] and restrain[] Defendants, their respective agents, representatives and employees, from trespassing on Plaintiff's property, from damaging Plaintiff's personal property, or from interfering with any and all measures taken or which may be taken by Plaintiff on the Stanley Ranch to maintain the Roads as private roads and to prevent unauthorized use of the Roads including, but not limited to, Plaintiff's gating, fencing or otherwise obstructing the Roads on the Stanley Ranch.

*Doc. 21* at 11. Additionally, it is clear from Plaintiff's recitation of the damages incurred that the only ongoing alleged trespass with which Plaintiff is concerned is the continued public use of the roads across his ranch. *See id.* at 5.

Whether these roads are public or private is disputed. In fact, that very issue is currently being adjudicated in a quiet title action filed by Plaintiff in New Mexico's Eighth Judicial District Court in August 2011. *Doc. 21* at 2. That action is scheduled for trial in March 2018. *Doc. 202* at 3; *doc. 205* at 2. Plaintiff has made clear that he does not wish for this Court to determine whether the road at issue, as it crosses Plaintiff's ranch, is public or private. *See doc. 207*, Joinder Hr'g Tr. at 42:6-44:21, 62:7-18. Rather, the parties agree it is appropriate for that issue to be determined by the state court. *See id.*; *see also id.* at 25:10-15. Therefore, the First Amended Complaint contains no allegations of ongoing trespass on land that is established as private. *See generally doc. 21.*

Accordingly, because the question of whether the road is public or private is presently the subject of a state court quiet title action, the Court shall not at this juncture

14

preserve Plaintiff's claim for injunctive relief based on a common-law trespass theory. A federal court should not enjoin future trespass on a road that the state court may declare to be public tomorrow. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). If the state court determines the road is private in the quiet title action, Defendant Olona shall be legally constrained from accessing it pursuant to state law. Thus, Plaintiff has an adequate remedy at law in state court.

Finally, Plaintiff argues that if the statutory trespass claim against Defendant Olona is dismissed, the Court should decline to exercise supplemental jurisdiction over Defendant Olona's counterclaim for malicious abuse of process. *Doc. 168* at 4-6. As this dispositive request was not the subject of the summary judgment motion at issue, the Court denies this request without prejudice.

**IV.   CONCLUSION**

Even viewing the facts in the light most favorable to Plaintiff, there is insufficient record evidence to create a triable issue as to whether Defendant Olona damaged, injured, or destroyed Plaintiff's property. Plaintiff's statutory trespass claim against Defendant Olona brought pursuant to N.M.S.A. § 30-14-1.1(D) is therefore DISMISSED WITH PREJUDICE. Plaintiff's corresponding claim for injunctive relief is accordingly

DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
United States Magistrate Judge