**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DAVID N. STANLEY,

      *Plaintiff,*

v.                                       Civ. No. 11-1108 GBW/JHR

DONALD GALLEGOS, *et al.,*

      *Defendants.*

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Plaintiff's Motion for Summary Judgment Regarding Claims for Injunctive Relief and Memorandum of Law Regarding Supplemental Jurisdiction over State Law Claims. *Doc. 216.* Having reviewed the Motion and the attendant briefing (*docs. 218, 219, 220, 221*), the Court will GRANT the Motion IN PART and DENY it IN PART, for the reasons that follow.

### I.    BACKGROUND

The dispute giving rise to this litigation involves a locked gate that Plaintiff David Stanley maintained across a road ("Red Hill Road") traversing his private ranch ("Stanley Ranch") located in Colfax and Mora Counties, New Mexico. The parties to this matter have long disputed whether Red Hill Road where it crosses Stanley Ranch is public or private, which has led to significant conflict. In particular, on two separate occasions, the gate was forcibly unlocked based on the unilateral determination by

Defendant Donald Gallegos, District Attorney for the Eighth Judicial District of New Mexico, that Red Hill Road was public. *See doc. 21* at 1-4.

The Court provided an extensive factual background of this litigation in its March 8, 2018 Memorandum Opinion and Order. *See doc. 209* at 2-5. Therefore, the Court will provide only a background of the pertinent procedural history here. Those additional facts that are material to the resolution of the present Motion are contained in the "Undisputed Facts" section below. *See infra* pp. 7-12.

Plaintiff filed this suit against several Defendants, including the sole remaining Defendants Gallegos and Ed Olona, on December 19, 2011. *Doc. 1.* He filed his First Amended Complaint—the operative Complaint in this action—on April 24, 2012. *Doc. 21.* Plaintiff's First Amended Complaint states a number of federal claims arising under 42 U.S.C. § 1983, including claims for damages and a claim for injunctive relief. *See id.* at 5-7, 11. In addition, the First Amended Complaint raises several claims arising under state law, including allegations that Defendants violated the state constitution and committed state law trespass. *See id.* at 7-9. Defendant Olona filed a state law counterclaim against Plaintiff for malicious abuse of process on February 17, 2012, and reasserted the same counterclaim in response to Plaintiff's First Amended Complaint on May 17, 2012. *Docs. 12, 33.*

The Court granted Defendant Olona summary judgment on all of Plaintiff's § 1983 and state constitutional claims on August 25, 2015. *Doc. 166.* In addition, the

Court dismissed Plaintiff's remaining state law statutory trespass claim against Defendant Olona on March 13, 2018, leaving only Defendant Olona's counterclaim for malicious abuse of process to tether him to this litigation. *Doc. 210*.

In its March 8, 2018 Memorandum Opinion and Order, the Court found that Defendant Gallegos violated Plaintiff's constitutional rights to due process and against unreasonable seizures. *See doc. 209* at 28-47. Specifically, the Court found that Defendant Gallegos failed to provide the requisite notice and pre-deprivation hearing to Plaintiff prior to interfering with Plaintiff's property interest in Red Hill Road. *See id*. Nevertheless, the Court found that Defendant Gallegos was entitled to Eleventh Amendment immunity on all of Plaintiff's federal claims for damages against him in his official capacity, and was further entitled to qualified immunity on all of Plaintiff's individual-capacity § 1983 claims for damages. *See id*. at 9-20, 48-63. Thus, the Court dismissed all federal claims for damages against Defendant Gallegos. However, the federal injunctive relief claim against Defendant Gallegos remained, because Defendant Gallegos's summary judgment arguments were premised on assertions of immunity that do not apply to injunctive relief claims. *See id*. at 64-65.

In addition to the federal injunctive relief claim, the remaining live claims in this case include (1) Plaintiff's Second Claim for Relief against Defendant Gallegos, alleging violations of the New Mexico Constitution (these claims arise under the New Mexico Tort Claims Act); (2) Plaintiff's Third and Fourth Claims for Relief against Defendant

3

Gallegos, alleging state law trespass;[1] and (3) Defendant Olona's state-law counterclaim for malicious abuse of process.

Because Plaintiff's claim for injunctive relief was the only remaining federal claim in the case, the Court held a telephonic status conference on April 17, 2018, to discern the parties' positions regarding the propriety of the Court maintaining jurisdiction over the state law claims, particularly in light of the pending quiet title action and its potential impact on the proper resolution of those claims. *See doc. 213.* Based on the parties' representations during that telephonic status conference, the Court set deadlines for briefing the present Motion for Summary Judgment on Plaintiff's injunctive relief claim, and further ordered the parties to submit arguments regarding whether the Court should retain supplemental jurisdiction over the remaining state law claims in this matter once the injunctive relief claim is resolved. *See doc. 214.* Those issues are now fully briefed and ready for ruling.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[1] In the briefing on the present Motion, Plaintiff expressed his willingness to voluntarily dismiss these state law trespass claims against Defendant Gallegos. *See doc. 216* at 17. However, Plaintiff did not file any formal stipulation of dismissal on the record. Therefore, the Court treats these claims as still pending for purposes of this Order.

Summary judgment is proper only if a reasonable trier of fact could not return a verdict for the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex*, 477 U.S. at 323). Once the movant meets this burden, Rule 56(e) requires the non-moving party to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). All material facts set forth in the motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

The court must adhere to three principles when evaluating a motion for summary judgment. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. *See*

*Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 551–54 (1999). Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. However, if the non-moving party's story "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Ultimately, "to survive the . . . motion, [the non-movant] need only present evidence from which a jury might return a verdict in his favor." *Liberty Lobby*, 477 U.S. at 257.

### III.   UNDISPUTED FACTS

In the instant Motion, Plaintiff provided a Statement of Uncontested Material Facts containing thirty separate facts gleaned from the Court's March 8, 2018 Memorandum Opinion and Order, designated by letters a. through dd. *See doc. 216* at 2-8. Plaintiff further asserted twenty-three "Additional undisputed material facts" based on the record, designated by letters ee. through aaa. *Id.* at 8-13.

The Local Rules regarding Summary Judgment procedures require that a non-moving party's response to a Motion for Summary must contain:

> . . . a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the

> number of the movant's fact that is disputed. All material facts set forth in
> the Memorandum will be deemed undisputed unless specifically
> controverted. The Response may set forth additional facts other than
> those which respond to the Memorandum which the non-movant
> contends are material to the resolution of the motion. Each additional fact
> must be lettered and must refer with particularity to those portions of the
> record upon which the non-movant relies.

D.N.M.LR-Civ. 56.1(b). In his Response to the instant Motion, as to all fifty-three of

Plaintiff's proposed undisputed material facts, Defendant Gallegos asserted that they

"speak for themselves." *See doc. 220* at 3-6. Further, regarding Plaintiff's asserted facts

gg. through aaa. (or 33-53), Defendant Gallegos, after stating that each one "speaks for

itself[,]" added that "Any other interpretation is denied." *See id.* Finally, as to all fifty-

three facts, Defendant Gallegos argued that they were either not relevant or not material

to Plaintiff's claim for injunctive relief. *Id.* As a result, the Court finds that Defendant

Gallegos has not disputed any of these fifty-three facts, as he has not specifically

controverted any of them. Bearing this finding in mind, the Court sets forth the

following undisputed material facts:

1. At all times relevant to this litigation, Defendant Donald Gallegos has

served as the District Attorney for the Eighth Judicial District of New

Mexico, which includes Colfax County. UMF b.[2]

---

[2] Citations to "UMF" refer to the Undisputed Material Facts laid out in Plaintiff's Motion. *See doc. 216* at
2-13. The citations herein incorporate the evidentiary support cited by Plaintiff.

2.      In September 2002, Defendant Gallegos wrote Plaintiff stating that he

        had received information that Plaintiff was planning to place a gate

        across Red Hill Road.  *Doc. 125*, Ex. C at 1; UMF f.

3.      In the September 2002 letter, Defendant Gallegos warned Plaintiff that

        Red Hill Road was public, and that Defendant Gallegos would possibly

        file criminal charges against Plaintiff if he obstructed the road.  *Id.*

4.      Sometime thereafter, Plaintiff, believing Red Hill Road to be his private

        property, placed a locked gate across the road at the Mora/Colfax

        County line to prevent public access.  *See doc. 21* at 1, 2; UMF d.

5.      On August 3, 2011, Defendant Gallegos sent a second letter to Plaintiff

        after learning of the locked the gate across Red Hill Road.  In the letter,

        Defendant Gallegos again informed Plaintiff of his belief that the road

        was public and warned Plaintiff that if he failed to remove it, Defendant

        Gallegos would "take any and all steps necessary to make sure that the

        gate is opened and/or removed."  *Doc. 160-1* at 17; UMF g.

6.      On August 11, 2011, Plaintiff filed a quiet title action in New Mexico's

        Eighth Judicial District Court, claiming title to (among other roads and

        pieces of land) Red Hill Road where it traverses the Stanley Ranch.  *Doc.

        202* at 3; *doc. 205* at 2; UMF h.

7.      The state court quiet title action remains pending. *Doc. 202* at 3; *doc. 205* at 2.

8.      Before Plaintiff placed a locked gate at the county line, Red Hill Road had previously been used by some members of the public, including Defendant Ed Olona, to access White Peak public lands, a popular hunting and wildlife area. *Docs. 136* at 1-3; *136-3* at 2.

9.      Defendant Olona, an avid sportsman and former president of the New Mexico Wildlife Federation, brought the issue of Red Hill Road's obstruction to the attention of Defendant Gallegos. *See doc. 149-1* at 2, Olona Dep. 18:1-20:17; UMF ee.

10.     Defendant Gallegos's factual and legal investigation into whether the road was public by operation of law relied entirely on research done and provided to him by others; he conducted no independent research or investigation. UMF n.

11.     Defendant Gallegos ultimately decided that Red Hill Road was public pursuant to 43 U.S.C. § 932. UMF e.

12.     On August 24, 2011, in order to reopen Red Hill Road to public access, Defendants Gallegos, Olona, and several other individuals including some police officers, went to the location of Plaintiff's gate. Defendant Gallegos personally removed the locked chain securing Plaintiff's gate

with a bolt cutter, and he and others who were present also removed a barbed-wire fence and T-posts set up at the cattle crossing. *Doc. 125* at 1-2; *doc. 21* at 3; *doc. 40* at 4; UMF i.

13.    On August 26, 2011, Defendant Gallegos sent Plaintiff a letter informing him, "I have taken action to open the gate on Red Hill Road." In that letter, Defendant Gallegos against asserted that Red Hill Road "is a public road," and informed Plaintiff that if he obstructed the road again, Defendant Gallegos would "take action to have criminal charges" filed against Plaintiff. UMF j.

14.    Approximately two weeks later, on September 10, 2011, Defendant Olona called the Colfax County Sheriff's Office to report that the gate had been re-locked. *Doc. 40-1* at 3; UMF k.

15.    Prior to Defendant Olona's phone call to the Colfax County Sheriff's Office on September 10, 2011, Defendant Gallegos had advised Colfax County Sheriff Patrick Casias that Red Hill Road was a public road. *Id.*

16.    Based on Defendant Gallegos's advice, in response to Defendant Olona's phone call, Sheriff Casias dispatched a sheriff's deputy to again forcibly unlock the gate across Red Hill Road using a bolt cutter on September 10, 2011. *Id.*

17.     After Plaintiff filed this lawsuit, Defendant Gallegos repeatedly testified

during his deposition that he would expressly permit anyone who

wanted to go on any road they or he thought was public to cut locks,

remove gates, tear down fences, or remove any other obstructions

without any fear that he would criminally charge or prosecute them for

this conduct.  UMF ii.

18.     Defendant Gallegos continues to believe that it was unnecessary to

obtain a court order authorizing him to open the gate across Red Hill

Road, and that he had the authority to decide that Red Hill Road was

public based on his statutory interpretation, subject to judicial review.

UMF pp, rr.

19.     During the course of this litigation, Defendant Gallegos denied

Plaintiff's request for admission that "there has not been any

adjudication, determination, or decision by any governmental authority

that Red Hill Road . . . is a public road[.]"  Defendant Gallegos later

testified during his deposition that the basis for his denial was that he is

a governmental authority, and that he "did decide that it is public."

UMF xx.

20.     Defendant Gallegos testified that he would not exclude the possibility of

        taking the same action, under the same circumstances, to open up a

        road he believes is public based on identical evidence.  UMF aaa.

IV.   ANALYSIS

   A.     **Injunctive Relief**

        i.     *The Eleventh Amendment does not bar injunctive relief sought by
               Plaintiff.*

Although Defendant does not raise an Eleventh Amendment defense to

Plaintiff's injunctive relief claim,[3] the Court finds it necessary to include a threshold

discussion of that issue here.  *See Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th

Cir. 1997) ("[B]ecause of its jurisdictional nature, a court ought to consider the issue of

Eleventh Amendment immunity at any time, even *sua sponte*.").  Under the *Ex parte

Young*[4] doctrine, a suit seeking relief from state action may proceed notwithstanding the

Eleventh Amendment "if the suit does not implicate special sovereignty interests and

the plaintiffs: (i) are suing state officials rather than the state itself; (ii) have alleged a

non-frivolous violation of federal law; and (iii) seek prospective equitable relief rather

than retroactive monetary relief from the state treasury."  *See Elephant Butte Irrigation

Dist. of N.M. v. Dep't of the Interior*, 160 F.3d 602, 609 (10th Cir. 1998).  Defendant

---

[3] In fact, counsel for Defendant Gallegos conceded that the Eleventh Amendment does not apply to the injunctive relief claim during the Court's April 17, 2018 hearing.  *Doc. 213* at 2.
[4] 209 U.S. 123 (1908).

Gallegos makes no argument that these prerequisites are not met here, *see generally doc. 220*, and the Court finds that they are.

However, the Supreme Court has since phrased the test somewhat differently: "In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261, 296 (1997) (plurality) (O'Connor, J., concurring in part)). Therefore, the fact that an injunctive relief claim is, broadly speaking, always prospective does not end the inquiry. There must be an allegation of "an ongoing violation of federal law." *Id*. While Defendant Gallegos does not invoke Eleventh Amendment immunity against the injunctive relief claim in the briefing before the Court, he does contend that Plaintiff has not established irreparable injury on the basis that Defendant Gallegos "has taken no action to interfere with Plaintiff's rights since August, 2011." *Doc. 220* at 9. Thus, the Court must consider whether Plaintiff sufficiently alleges "an ongoing violation of federal law" such that, pursuant to *Ex parte Young*, the Eleventh Amendment does not bar his official-capacity claim for injunctive relief.

The so-called "straightforward inquiry" into whether Plaintiff has alleged an ongoing violation of federal law is in fact quite a thorny question in practice, giving rise

to significant disagreement among the circuit courts as to the meaning of "ongoing."

This inquiry overlaps to a significant degree with the analysis of whether the request for injunctive relief has become moot, thereby depriving the plaintiff standing to obtain injunctive relief. The requirement of standing means that a "plaintiff cannot maintain a[n] injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991). Put another way, because "'[t]he purpose of an injunction is to prevent future violations[,]'" Plaintiff must show that "'there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. . . . To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.'" *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Indeed, the Tenth Circuit has stated that "whether the facts indicate a danger of future violations" of federal law constitutes "[t]he most important factor" for a court to consider when deciding whether to exercise its discretion to grant injunctive relief. *Id.*

Courts, however, disagree about whether the requirement of showing an "ongoing violation" under *Ex parte Young* requires something more (and if so, how much) than the standing/mootness analysis under Article III. *Compare, e.g., Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) ("[A]t the point that a threatened

injury becomes sufficiently imminent and particularized to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy . . . *Ex parte Young*"), *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013) (similarly fusing the *Ex parte Young* and mootness doctrines, by rejecting the defendants' argument that a non-moot claim did not involve an ongoing violation as an attempt to "work an end-run around the voluntary-cessation exception to mootness where a state actor is involved"), *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001) ("The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent") *and Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999); *cert. denied*, 529 U.S. 1012 (2000) ("[W]here there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied"); *with Allen v. Cooper*, No. 17-1522, 2018 WL 3352378, at *11 (4th Cir. July 10, 2018) (rejecting the plaintiffs' argument that the defendant's history of repeated infringements in the past strongly indicated a need to enjoin future infringements, on the basis that such argument wrongly "conflates the *Ex parte Young* exception with the doctrine of mootness[,]" and holding that because "the only ongoing infringement that [plaintiffs] plausibly alleged has concededly ended, they cannot employ the *Ex parte Young* exception to address their fear of future infringements."), *and Watkins v. Blizinger*,

789 F.2d 474, 484 (7th Cir. 1986), *cert. denied*, 481 U.S. 1038 (1987) (rejecting the plaintiffs'

argument that *Young* applies wherever the claim based on federal law is not moot).[5]

Ultimately, the Court finds that the constitutional violations alleged and

established in this matter are ongoing within the meaning of *Ex Parte Young*, such that it

has jurisdiction to enjoin Defendant Gallegos from such violations in the future. While

the Tenth Circuit has yet to take a position on the dispute outlined above, the Court

finds persuasive the Fifth Circuit's approach in a case with similar facts to the instant

litigation. *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389 (5th Cir. 2015).

In *Paxton*, the Attorney General of the State of Texas sent letters to the plaintiff, a

company making and selling dietary supplements, warning the company that certain

information on its product labels was "false, misleading, or deceptive" in violation of

state statutory law. *Id.* at 392. The letters further indicated that "formal enforcement

was on the horizon" for both the plaintiff and the retailers selling their products, which

resulted in the retailers removing the products from their shelves. *Id.* The Attorney

General argued on appeal that the plaintiff failed to allege an "ongoing violation of

federal law," as necessary to invoke the *Ex parte Young* doctrine. *Id.* at 394. Rejecting

this argument, the Fifth Circuit first explained, "It is true that a complaint must allege

that the defendant *is violating* federal law, not simply that the defendant has done so."

*Id.* (emphasis in original). Notably, the Fifth Circuit took a middle-ground approach to

---

[5] The *Watkins* court did, however, characterize *Young* as a doctrine that permits federal courts to address "continuing **or impending** conduct." 789 F.2d at 484 (emphasis added).

the relationship between mootness and *Ex parte Young*, stating in a footnote that the requirement to show an ongoing violation "is similar but not identical to the Article III minimum for standing to request an injunction, which requires ongoing harm or a threat of imminent harm." *Id.* at 394 n.5. Nonetheless, the court found that the requirement was met by virtue of "the complaint's straightforward allegations . . . that the AG's continued refusal (now after nearly four years) to justify its threatening letters still inflicts . . . punishment without due process[] and other constitutional violations. These allegations are sufficient to demonstrate the ongoing nature of the alleged unconstitutional conduct[.]" *Id.* at 395.

Similarly, here, Defendant Gallegos sent Plaintiff a letter immediately following the first removal of the gate across Red Hill Road, informing him of the removal and warning Plaintiff that Red Hill Road "is a public road and any placement of a gate or any other obstruction will be dealt with appropriately, including, but not limited to, the filing of criminal charges against you." *Doc. 125*, Ex. C at 1; *see also* UMF j. Plaintiff's second attempt to erect a gate in the same location immediately resulted in its second removal by law enforcement officials acting on the advice of Defendant Gallegos. *See doc. 21* at 3-4; *doc. 40-1* at 3. The Court has already found that Defendant Gallegos violated Plaintiff's right to due process by these actions. *Doc. 209* at 28-47. Yet, even as of today, Defendant Gallegos has not committed to providing due process to Plaintiff before removing any new obstructions. In fact, similar to the *Paxton* defendant's refusal

to justify its threatening letters, Defendant Gallegos has never swayed from the threatening position taken in the letters he sent to Plaintiff. To the contrary, he still proclaims that public use of Red Hill Road "should be maintained, at least until the state suit is concluded." *Doc. 220* at 9; *see also doc. 160-1* at 13, Gallegos Dep. 171:20-172:12. As Plaintiff's First Amended Complaint alleges, his inability to prevent continued public access to Red Hill Road has disrupted his efforts to implement a game management plan on his ranch, to reintroduce trout and other aquatic life to the stream along which the roads run, to contain cattle within certain grazing areas of the ranch, and the prevent or limit trespassing and illegal poaching on the ranch. *Doc. 21* at 5. Defendant's Gallegos unrecanted threats effectively and continuously constrain Plaintiff from preventing public access to his property through Red Hill Road. Thus, as in *Paxton*, Plaintiff has made allegations[6] sufficient to demonstrate the ongoing nature of Defendant Gallegos's due process violation.

Therefore, the dictates of the *Ex parte Young* doctrine have been met, such that the Eleventh Amendment does not bar Plaintiff's official-capacity injunctive relief claim.[7]

---

[6] The "inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Verizon*, 535 U.S. at 646.

[7] Plaintiff's Motion does not distinguish between his individual-capacity and official-capacity injunctive relief claims against Defendant Gallegos. *See generally doc. 216*. Nonetheless, the Court notes that only an official-capacity injunctive relief claim against a state official is viable under § 1983. *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.") (citing *Hafer v. Melo*, 502 U.S. 21, 30, 27 (1991)). Thus, the Court assumes for purposes of deciding the present Motion that Plaintiff seeks summary judgment on his injunctive relief claim against Defendant Gallegos solely in his official capacity. Any injunctive relief sought against Defendant Gallegos in his individual capacity is denied.

ii.     *Requirements Plaintiff must meet to obtain a permanent injunction.*

As with any remedy, injunctive relief requires first that the plaintiff prevail on the merits. *See Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007); *see also Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987) (preliminary injunction differs from a permanent injunction in that a plaintiff seeking a permanent injunction must achieve actual success on the merits, while a plaintiff seeking a preliminary injunction must only show a likelihood of success on the merits). Moreover, well-established principles of equity demand that a plaintiff satisfy a four-factor test before a court may grant injunctive relief. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

> A plaintiff [seeking a permanent injunction] must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.[8]

---

[8] Other courts have described a four-factor test that differs slightly from the one set forth above. Specifically, Plaintiff lays out the following formulation of the test:

> For a party to obtain a permanent injunction, it must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*See doc. 216* at 14. *See also, e.g., Wagnon*, 476 F.3d at 822; *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003). However, as explained more fully herein, the Supreme Court's formulation of the relevant factors in *eBay* best captures the considerations most important to the decision whether to grant injunctive relief—in particular, the need to show the inadequacy of legal remedies. *See* 547 U.S. at 391; *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010) (applying the *eBay* formulation of the four-factor test); *Sierra Club v. Okla. Gas & Elec. Co*, 816 F.3d 666, 676 n.9 (10th Cir. 2016) (same).

*Id.* A showing of inadequacy of legal remedies is essential to an injunctive relief claim, because traditionally, "the equitable power of the courts is available only when legal remedies are demonstrably inadequate." *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1144 (10th Cir. 2012) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959)).

However, in the briefing on the present Motion, Plaintiff argues that he need not show inadequacy of legal remedies on the basis that the "irreparable harm" factor is automatically met where a constitutional violation has been alleged. *See doc. 221* at 2-4. Indeed, some courts have taken such an approach, particularly in "cases involving alleged infringements of free speech, association, privacy, or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by subsequent relief." *Public Serv. Co. of N.H. v. Town of W. Newbury*, 835 F.2d 380, 382 (1st Cir. 1987); *see also Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citation omitted); *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (limiting the presumption to cases involving the right of privacy "and

Significantly, the distinction between the two formulations of the applicable test is merely one of form, not of substance. That is, the requirement to show "irreparable harm unless the injunction is issued" can be restated as a requirement to show that only an equitable remedy—and not a legal one—could adequately address the harm alleged. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) ("[A] plaintiff satisfies the irreparable harm requirement by demonstrating a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.") (internal quotations and citation omitted).

certain First Amendment claims establishing an imminent likelihood that pure speech will be chilled or prevented altogether."). This argument must be rejected.

First, with one exception, Plaintiff points only to cases involving application of this presumption in the context of a preliminary injunction. *See doc. 221* at 2-3. As the Court is currently ruling on Plaintiff's request for a permanent injunction, those cases are inapplicable. The one exception is the Ninth Circuit *Silver Sage* opinion. *See Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001). However, *Silver Sage* appears to have been founded on a different presumption – one based on the violation of a federal statute that specifically provides for equitable relief. *Id*. Moreover, for reasons that will be discussed further, at least two district courts in the Ninth Circuit have concluded that *Silver Sage* is in conflict with a subsequent Supreme Court holding. *See Doe v. Samuel Merritt Univ.*, 921 F. Supp. 2d 958, 963 (N.D. Cal. 2013) (holding that a presumption of irreparable harm conflicts with later Supreme Court decision); *see also Enyart v. Nat'l Conference of Bar Exam'rs, Inc.*, 2010 WL 475361, at *6 (N.D. Cal. Feb. 4, 2010) (same). In short, Plaintiff has pointed to no controlling or persuasive authority for a presumption of irreparable harm in the context of a permanent injunction simply based upon the existence of a constitutional violation.

More significantly, such a presumption would be inconsistent with the Supreme Court's seminal decision regarding injunctive relief in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). There, the Supreme Court overruled an application of a modified

preliminary injunction test under which plaintiffs who demonstrated a strong

likelihood of prevailing on the merits could receive a preliminary injunction based only

on a possibility—rather than a likelihood—of irreparable harm. *Id*. at 21-22. The *Winter*

Court explained that the more lenient standard of relief was "inconsistent with our

characterization of injunctive relief as an extraordinary remedy that may only be

awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22.

While *Winter* did not address the constitutional-violation presumption urged by

Plaintiff, such a presumption would contradict the *Winter* admonishment that an

"preliminary injunction is an extraordinary remedy **never** awarded as of right." *Id*. at

24 (emphasis added). Importantly, while the *Winter* Court was reviewing a preliminary

injunction, it made clear that its ruling applied with equal force to consideration of a

permanent injunction. *See id.* at 31-32 ("[W]hat we have said makes clear that it would

be an abuse of discretion to enter a permanent injunction, after final decision on the

merits, along the same lines as the preliminary injunction.").

In fact, the Tenth Circuit has endorsed a broad reading of *Winter*. *See Diné

Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276 (10th Cir. 2016). In

*Diné*, the court held that *Winter* overruled the Tenth Circuit's so-called "modified

approach" to preliminary injunctions, which relaxed the "likelihood of success on the

merits" requirement of the four-part test under certain circumstances. Specifically, the

"modified approach" dictated that "when the other three requirements 'tip strongly in

[the plaintiff's] favor, the test is modified, and the plaintiff may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'"  *Id.* at 1281-82 (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).  Under those circumstances, courts would focus primarily on the balance of relative harms between the parties to determine whether a preliminary injunction was warranted.  *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1002 (10th Cir. 2004) (Seymour, J., concurring in part and dissenting in part).

In recognizing that *Winter* abrogated the modified approach, the *Diné* court explained that "**any** modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible."  839 F.3d at 1282 (emphasis added).  Consequently, it is apparent that a *per se* rule that any constitutional violation establishes irreparable harm would be likewise impermissible after *Winter*.  The Court recognizes that certain deprivations of particular constitutional rights are particularly difficult to evaluate and compensate monetarily.  *See, e.g., Kikumura*, 242 F.3d 950 (denial of pastoral visits); *Planned Parenthood Assoc. of Utah v. Herbert*, 828 F.3d 1245 (10th Cir. 2016) (denial of right of association and right to privacy).  When such rights are being violated, courts will nearly always find irreparable harm—*i.e.*, harm that is fundamentally irremediable at law.  However, notwithstanding the broad dicta

contained in certain Tenth Circuit jurisprudence[9] that this default finding applies to **all** constitutional violations, such an assertion could not be correct. For example, not every violation of the Takings Clause of the Fifth Amendment subjects an individual to irreparable harm. *See, e.g., Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63-64 (2d Cir. 2011). Such an interpretation would directly conflict with the remedy of "just compensation" included in the language of the clause itself. *See* U.S. Const. amend. V. In this Court's opinion, the violation of due process rights surrounding a property dispute (such as in the instant case) is not the type of violation where irreparable harm is simply presumed. *See Town of W. Newbury*, 835 F.2d at 382 (holding that "[t]he alleged denial of procedural due process, without more, does not automatically trigger" a finding of irreparable harm).

Based on the foregoing, this Court holds that Plaintiff must show irreparable harm in order to qualify for a permanent injunction even where he has already established a constitutional violation.

Next, Plaintiff argues that because 42 U.S.C. § 1983 expressly provides for equitable relief, he need not satisfy *any* of the standard four requirements for an injunction.[10] *See doc. 221* at 2-4. In *Atchison, Topeka, & Santa Fe Ry. Co. v. Lennen*, the

---

[9] *See, e.g., Kikumura*, 242 F.3d at 963.

[10] Plaintiff conflates the two presumption doctrines addressed herein, but they are distinct. Courts have typically applied the first presumption doctrine in cases where a plaintiff seeking preliminary injunctive relief is able to show that a serious violation of her constitutional rights is imminent, and the right at stake is deemed of such importance that any violation thereof could not be remedied by subsequent monetary relief. *See Kikumura*, 242 F.3d at 963; *Town of W. Newbury*, 835 F.2d at 382. In other words, it is a general

Tenth Circuit held that, in the context of either preliminary or permanent injunctive relief, irreparable harm need not be shown "[w]hen the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations[.]"  640 F.2d 255, 259 (10th Cir. 1981).  However, the Tenth Circuit has drastically limited this presumption doctrine in light of divergent Supreme Court precedent:

> The Plaintiffs–Appellees argue that under our precedent, particularly *Atchison, Topeka & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255 (10th Cir. 1981), no showing of irreparable harm is necessary when "the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations," *id.* at 259.  But [*Atchison*] and our other decisions following it . . . must be read in light of the Supreme Court's decision in *Weinberger v. Romero–Barcelo*, 456 U.S. 305 (1982) (postdating [*Atchison*]) and the line of cases that follow *Romero–Barcelo*.  Those cases clarify the narrow circumstances when a presumption of irreparable injury could apply stemming from a congressional enactment.

---

rule that certain threatened constitutional violations are inherently irremediable at law.  In contrast, the second presumption doctrine stems from a much older tradition of judicial deference to congressional intent.  *See, e.g., United States v. City & Cty. of San Fran.*, 310 U.S. 16, 31 (1940) ("The equitable doctrines relied on do not militate against the capacity of a court of equity as a proper forum in which to make a declared policy of Congress effective."); *Amoco*, 480 U.S. at 543 n.9 (distinguishing the case at bar from *TVA v. Hill*, 437 U.S. 153 (1978), on the basis that "[t]he purpose and language" of the statute at issue in *Hill*—the Endangered Species Act of 1973—"limited the remedies available to the District Court; only an injunction could vindicate the objectives of the Act.") (internal quotations and alterations omitted); *Atchison, Topeka, & Santa Fe Ry. Co. v. Lennen*, 640 F.2d 255, 259 (10th Cir. 1981) ("Since Congress has expressly authorized federal courts to grant injunctive relief in furtherance of the express purposes of Section 306, it is not required that irreparable harm or inadequacy of legal remedies first be shown.") (citation omitted).  In other words, and as explained more fully below, the latter doctrine defers to any expressly stated intent of Congress to provide injunctive relief as the preferred remedy for a given statutory violation.  Where Congress has prioritized injunctive relief, traditional common-law standards for equitable relief need not be met.  Given this particular basis, it is arguable that *Winter* would not foreclose application of the statutory-presumption doctrine.

The Court held in *Romero–Barcelo* that courts should "not lightly assume that Congress has intended to depart from established principles" of equity jurisprudence simply because a federal statute specifies that courts have the power to dispense equitable relief for statutory violations. 456 U.S. at 313. Further, the Court specified in *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531 (1987), that applying a presumption of irreparable harm for violation of a federal statute, without a proper textual basis in the statute, is a departure from traditional equitable principles. *Id.* at 544–45.

*Fish v. Kobach*, 840 F.3d 710, 751 n.24 (10th Cir. 2016) (some citations and parentheticals omitted). The *Fish* court went on to explain that "only an 'unequivocal statement' by Congress may modify the courts' traditional equitable jurisdiction"—*i.e.*, eliminate Plaintiff's burden to meet the traditional four-factor test for equitable relief. *Id.* (quoting *Garcia v. Bd. of Educ.*, 520 F.3d 1116, 1129 (10th Cir. 2008)). Congress made no such "unequivocal statement" in the text of § 1983. Consequently, the statutory-presumption doctrine does not relieve the instant Plaintiff from satisfying the traditional four-factor test before injunctive relief can be granted.

Having concluded that neither the "constitutional violation" nor "statutory" presumptions relieve Plaintiff from satisfying the traditional four-factor test for injunctive relief, the Court now turns to the specific injunctive relief requested.

At the Court's direction, Plaintiff has provided three different versions of the requested injunction, one for each of the following scenarios: (1) the state court has determined Red Hill Road to be public; (2) the state court has determined Red Hill Road

to be private; (3) the state court has not yet resolved the pending quiet title action. *See doc. 216* at 15-17.

Having reviewed Plaintiff's various proposed injunctions, and having further considered the applicable law, the Court finds that federal injunctive relief is not appropriate in either scenario where the state court has finally determined the road status for the reasons explained more fully below. Nonetheless, the Court will grant Plaintiff limited injunctive relief, which will remain in place until the state court quiet title decision becomes final.

> iii. *Plaintiff is not entitled to federal injunctive relief in the face of a final state court ruling that Red Hill Road is either public or private.*

Plaintiff asks for the following injunction if the road is public:

> Absent a showing of exigent circumstances, or an Order by a Court of law, Defendant Gallegos is enjoined and restrained from trespassing on Plaintiff's property, from damaging Plaintiff's personal property, or from interfering with any and all measures taken or which may be taken by Plaintiff on the Stanley Ranch, including any roads on the Ranch, without providing written notice and a meaningful opportunity for Plaintiff to present his position and argument contrary to Defendant Gallegos' position, prior to damaging or taking Plaintiff's personal property, or causing or encouraging, or protecting from prosecution, others . . . who damage or take Plaintiff's personal property.

*Doc. 216* at 16.

The Court finds that no form of federal injunctive relief would be appropriate if Red Hill Road is determined to be public by the state court overseeing Plaintiff's quiet title action. As discussed in the Court's Memorandum Opinion and Order, Defendant

Gallegos violated Plaintiff's constitutional due process rights by failing to afford him notice and an opportunity to be heard on the status of Red Hill Road, because Plaintiff had alleged a sufficient property interest based on his colorable claim to title in the road. *Doc. 209* at 28-47. If, however, the state court decides that Red Hill Road is public, such a colorable claim would vanish, obliterating Plaintiff's entitlement to pre-deprivation notice and opportunity for hearing. *See id.* at 32-33; *see also Evers v. Custer Cty.*, 745 F.2d 1196, 1200-03 (9th Cir. 1984); *McCulloch v. Glasgow*, 620 F.2d 47, 50 (5th Cir. 1980). Accordingly, if Red Hill Road is held to be public, Plaintiff's due process rights will not be implicated by any action taken by Defendant Gallegos to remove obstructions Plaintiff may place across the road in the future.

The foregoing conclusion does not change merely because Plaintiff also seeks injunctive relief guarding against trespass on his undisputedly private property (off the side of the road) or damage to his personal property. Such conduct is redressable by way of state trespass law or a claim for conversion at common law, and Plaintiff has failed to show the inadequacy of such state law remedies. *See* N.M.S.A. § 30-14-1.1(D); *Muncey v. Eyeglass World, LLC*, 289 P.3d 1255, 1262-63 (N.M. Ct. App. 2012) (describing the elements of the common-law conversion claim in New Mexico). Consequently, Plaintiff has failed to meet a fundamental requirement for federal injunctive relief in the event that Red Hill Road is declared private by a final state court ruling. *See eBay*, 547 U.S. at 391; *Sanders*, 689 F.3d at 1144.

Plaintiff's failure in this regard also proves fatal to Plaintiff's requested injunctive relief if the road is found to be private by the state court, which reads as follows:

> Defendant Gallegos is enjoined and restrained from trespassing on Plaintiff's property, from damaging Plaintiff's personal property, or from interfering with any and all measures taken or which may be taken by Plaintiff on the Stanley Ranch, including any roads on the Ranch; Defendant Gallegos is further enjoined from encouraging or allowing others to remove obstructions on any Stanley ranch roads they or he believe are public (absent an official public road declaration or judicial order declaring the road to be public), and from automatically declining to prosecute any individuals who interfere with Plaintiff's property rights, regardless of the underlying facts.

*Doc. 216* at 16.

Again, in such a circumstance, Plaintiff could readily bring a civil common-law or statutory trespass claim against any person who attempts to use the private road or interferes with any measures taken to maintain the road as private. N.M.S.A. § 30-14-1.1(D). The availability of an adequate remedy at law forecloses equitable relief.[11] *Sanders*, 689 F.3d at 1144. Despite the readily available state law remedy of a trespass claim, Plaintiff argues that "there is simply no adequate legal remedy for any future (and the prior) deprivations of Plaintiff's constitutional rights by Defendant Gallegos[,]" because "Defendant Gallegos will come up with a creative means to establish that he failed to understand the law." *Doc. 221* at 5. As discussed above, however, an official-

---

[11] Curiously, however, Plaintiff stated his willingness to voluntarily dismiss his state law trespass claims against Defendant Gallegos in his briefing on the present motion. *See doc. 216* at 17. Any such voluntary dismissal would not change the present analysis—the state law claim continues to be an available avenue for relief in the event of future trespass on Plaintiff's realty accompanied by damage to his personal property.

capacity injunctive relief claim cannot stand against a state official unless the plaintiff is

seeking relief that is "properly characterized as prospective[,]" such that whether there

is a remedy at law for Defendant Gallegos's **prior** constitutional violations is irrelevant

to the question at hand.  *See Verizon*, 535 U.S. at 645.  As for potential future

deprivations, Plaintiff specifically gives the example of a hypothetical scenario wherein

Defendant Olona "takes Plaintiff's property" based on Defendant Gallegos's assurances

that he will not prosecute anyone who removes obstructions from Red Hill Road, thus

"allowing Mr. Olona immunity from prosecution[.]"  *Doc. 221* at 5.  Plaintiff asserts that

in such a scenario, Defendant Gallegos "will argue the absence of clearly established

law precluding him from announcing in advance what crimes he will and will not

prosecute."  *Id.*  It may be true that Defendant Gallegos would be entitled to qualified

immunity in such a scenario in light of the absence of clearly established law on that

point.  However, Plaintiff's argument touches only on whether there is available legal

remedy pursuant to § 1983.  Again, Plaintiff does not explain why he could not bring

claims of trespass or conversion against Defendant Gallegos or Defendant Olona if

either person were to trespass on Plaintiff's undisputedly private property or to damage

or take Plaintiff's personal property in the future.  *See, e.g.*, N.M.S.A. § 30-14-1.1(D);

*Muncey*, 289 P.3d at 1262-63.

In sum, in the event that a state court issues a final ruling that Red Hill Road is

private, Plaintiff will have adequate redress at law if Defendant Gallegos or any other

person trespasses on Plaintiff's property, damages Plaintiff's personal property, or otherwise interferes with any measures Plaintiff takes to maintain the road as private. In the event that a state court issues a final ruling that Red Hill Road is public, Plaintiff would no longer be entitled to notice and an opportunity to be heard before Defendant Gallegos or any other law enforcement official takes action to remove any obstructions placed on the public road. And, if Defendant Gallegos or any other person trespasses on Plaintiff's private land or damages his personal property in the process of removing such obstructions from a public road, Plaintiff will have adequate redress at law for the same reasons just explained. As a result, a final state court ruling for either position will obviate the need for a federal injunction. Thus, the Court denies Plaintiff's request for injunctive relief assuming the existence of a final state court ruling that Red Hill Road is either public or private.

> iv. *Plaintiff is entitled to limited injunctive relief until the state court quiet title ruling becomes final.*

Plaintiff's proposed injunction while the nature of the road remains undecided is as follows:

> Defendant Gallegos is enjoined and restrained from trespassing on Plaintiff's property, from damaging Plaintiff's personal property, or from interfering with any and all measures taken or which may be taken by Plaintiff on the Stanley Ranch, including any roads on the Ranch; Defendant Gallegos is further enjoined from encouraging or allowing others to remove obstructions on any Stanley ranch roads they or he believe are public (absent an official public road declaration or judicial order declaring the road to be public), and from automatically declining to

31

prosecute any individuals who interfere with Plaintiff's property rights, regardless of the underlying facts.

*Doc. 216* at 16-17.

The Court finds that Plaintiff's proposed injunction must be rejected in favor of a much narrower injunction for several reasons. First, there is no basis for this Court to grant injunctive relief governing all roads on the Stanley Ranch. Plaintiff's claims in this case stem solely from interference with a gate across Red Hill Road. Thus, the Court has not even considered—let alone determined—the merits of any claim relating to any other road traversing Plaintiff's property or the property interest that Plaintiff may have in such roads.

Second, the proposed injunction is far too broad and general to be practicable. Ostensibly, Defendant Gallegos would violate this injunction merely by bringing charges against Plaintiff for obstruction of a public road or highway pursuant to N.M.S.A. §§ 67-7-1, 67-7-2, or 67-7-10. Yet the Court made clear in its Memorandum Opinion and Order that Defendant Gallegos could have complied with the requirements of due process had he filed such charges prior to the deprivation, thus allowing Plaintiff his day in court to present his argument that the road is private. *Doc. 209* at 38-47. Due process does not necessarily require that Defendant Gallegos obtain "an official public road declaration or judicial order declaring the road to be public" prior to taking any action to interfere with any of Plaintiff's property rights; rather, determining the dictates of due process in a given situation is a highly fact-specific

inquiry.  Plaintiff is correct that, faced with the specific facts underlying this litigation—the removal of an obstruction from a disputed-status road traversing Plaintiff's land—the Court found that due process required notice and an opportunity to be heard, but those basic requirements of due process could have been afforded in various ways outside of a court order.  More importantly, the Court's fact-specific finding on that point would not necessarily apply to *any* interference with *any* measures taken by Plaintiff on his ranch.[12]

Third, to obtain a permanent injunction, Plaintiff must demonstrate that irreparable harm will result if the injunction is not issued (or, stated another way, that there is no adequate remedy at law for Defendant Gallegos's wrongful conduct).  In an effort to establish that criterion, Plaintiff argues that "without an injunction, there is nothing to prevent Defendant Gallegos from making his own legal determinations—and personally carrying out those decisions and allowing others to do so as well[]–regarding Plaintiff's property."  *Doc. 216* at 14.  Further, Plaintiff asserts that in the absence of an injunction, "Plaintiff will be irreparably harmed by Defendant Gallegos' encouragement that others deprive him of his constitutional rights [and] by Defendant Gallegos' apparent willingness to take actions against Plaintiff . . . without regard to the law."  *Id.* at 15.

---

[12] Plaintiff's proposed language, "Defendant Gallegos is enjoined and restrained from . . . interfering with any and all measures taken or which may be taken by Plaintiff on the Stanley Ranch, including any roads on the Ranch" is also confusing and seemingly incomplete.  Measures taken to what end?  The Court has assumed in its analysis that this language refers to measures taken to maintain the Ranch—including any roads on the Ranch—as private, but the language is certainly susceptible to other interpretations.

However, Plaintiff fails to explain whether or how the requested injunctive relief is tailored to the irreparable harm Plaintiff anticipates in the absence of an injunction. Nor does Plaintiff explain whether or how the merits of his constitutional claims relate to the anticipated harm. The Court did not find that it was a constitutional violation *per se* for Defendant Gallegos to "mak[e] his own legal determinations . . . regarding Plaintiff's property." It was not the determination itself that violated Plaintiff's rights. It was not even the fact that Defendant Gallegos "personally carr[ied] out those decisions" that amounted to a constitutional violation—for example, Defendant Gallegos could have comported with due process requirements had he "personally carried out" his determination by bringing criminal charges against Plaintiff for obstruction of a public road. Rather, the constitutional violation lay in Defendant Gallegos's decision to physically dismantle the gate without first affording Plaintiff notice and an opportunity to be heard regarding the underlying legal determination that the road was public, when Plaintiff had a cognizable property interest in the road. *See doc. 209* at 33-47.

As to the requested injunctive relief pertaining to Defendant Gallegos's assurances to third parties that they will not face criminal charges for interfering with Plaintiff's gate across Red Hill Road, Plaintiff did not even bring—let alone prevail on— any claim that Defendant Gallegos violated Plaintiff's constitutional rights by making

such assurances.[13]  *See generally doc. 21.*  Nor does Plaintiff allege that third parties have

continued to interfere with attempts by Plaintiff to maintain Red Hill Road as private.

*See generally id.; see also doc. 216.*  As a result, Plaintiff has failed to establish either that

Defendant Gallegos's assurances of non-prosecution constitute a violation of federal

law or that they are ongoing, as would be necessary to state a claim for injunctive relief

against Defendant Gallegos in his official capacity.  *Verizon*, 535 U.S. at 645.  Further,

any injunction issued by the Court may not bind persons who are not parties to this

litigation, unless they are officers, agents, servants, employees, or attorneys of the

parties, or are otherwise "in active concert or participation" with such persons or with

the parties themselves.  Fed. R. Civ. P. 65(d)(2).  Plaintiff's proposed relief appears to be

an attempt to circumvent this restriction, by placing Defendant Gallegos on the hook for

any actions taken by non-parties to remove obstructions from Red Hill Road—even if

such actions are taken without Defendant Gallegos's knowledge or participation—

---

[13] Moreover, the Court is dubious that Defendant Gallegos's assurances of non-prosecution constitute an
ongoing violation of federal law.  Unlike his ill-conceived decisions to adjudicate the status of Red Hill
Road, and to execute that adjudication unilaterally, Defendant Gallegos's decisions regarding whether or
not to prosecute fall squarely within the protected realm of his prosecutorial discretion.  The impropriety
of federal intervention in state criminal matters is well-established.  *See Younger v. Harris*, 401 U.S. 37
(1971).  The *Younger v. Harris* abstention doctrine applies not only in the context of current criminal
prosecutions, but also to threatened or future prosecutions when the requested federal injunctive relief
would entail "an ongoing federal audit" of the state criminal process, or would otherwise "require for its
enforcement the continuous supervision by the federal court" over Defendant Gallegos's conduct in his
prosecutorial role.  *See O'Shea v. Littleton*, 414 U.S. 488, 500-01 (1974).  The Supreme Court has made clear
that such "monitoring of the operation of state court functions . . . is antipathetic to established principles
of comity."  *Id*. at 501.  *See also City of L.A. v. Lyons*, 461 U.S. 95, 112 (1983) ("[R]ecognition of the need for a
proper balance between state and federal authority counsels restraint in the issuance of injunctions
against state officers engaged in the administration of the states' criminal laws in the absence of
irreparable injury which is both great and immediate.") (citations omitted).

unless he criminally prosecutes them.  See *doc. 216* at 16 (seeking injunction against Defendant Gallegos from "allowing others to remove obstructions").  The Court will not entertain this attempt.

Nonetheless, for the reasons explained more fully below, the Court agrees that some limited injunctive relief is proper to ensure that Defendant Gallegos commits no further violations of Plaintiff's constitutional right to due process while Plaintiff's quiet title claim to the road remains unresolved.  The Court reaches this conclusion because Plaintiff has successfully established (1) actual success on the merits; (2) an irreparable injury which is irremediable at law; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *See eBay*, 547 U.S. at 391; *Wagnon*, 476 F.3d at 822.  Accordingly, the Court will grant Plaintiff's Motion in part by issuing the following injunction:

**Until the state court issues a final ruling regarding whether Red Hill Road is public or private, and absent an exigent public safety concern, Defendant Donald Gallegos is hereby enjoined from interfering with any locked gate or other barrier that Plaintiff may install across Red Hill Road to restrict or prevent public access to the road where it traverses his private property.  During the same time period, Defendant Gallegos is further enjoined from directing or instructing any third parties, including law enforcement officials, to engage in any such interference.**

**Notwithstanding the foregoing, no action authorized pursuant to a lawful court order or warrant signed by a judge of a court of record shall constitute a violation of this injunction if the application to the judge for such an order or warrant was accompanied by a copy of this Order and the Memorandum Opinion and Order (*doc. 209*). Moreover, in no event shall a decision to bring criminal charges related to any obstruction constitute a violation of this injunction. This injunction shall terminate once the state court has issued a final decision (as defined in 28 U.S.C. § 2244(d)(1)(A)) in the pending quiet title action regarding whether Red Hill Road is public or private.[14]**

        a. <u>Plaintiff has shown an irreparable injury and the inadequacy of legal remedies to compensate for that injury.</u>

The Court is cognizant of the fact that "one of the most important considerations governing the exercise of equitable power is a proper respect for the integrity and

---

[14] That this injunction will be dissolved by its own terms does not change the fact that it is a permanent—rather than a preliminary—injunction, as those terms are used in the Federal Rules of Civil Procedure. In fact, when crafting a "permanent" injunction, a court should consider making it adaptable to changing conditions:

> A preventive injunction is to be cast in terms reasonably adjusted to present conditions, and it is to be read in the context of its circumstances. But it is continuing and should be subject to adaptation as events change. It is permanent in the sense that it enjoins the offending party from doing that which he is doing or threatening to do without present legal or equitable right, to the injury of another. But under long recognized practice in equity, it is subject to modification in the interest of adjustment to changed conditions, or to complete vacation when change in conditions end all need for it.

*City & Cty. of Denver v. Denver Tramway Corp.*, 187 F.2d 410, 416 (10th Cir. 1951).

function of local government institutions[,]" especially when such institutions "are ready, willing, and . . . able to remedy the deprivation of constitutional rights themselves." *Missouri v. Jenkins*, 495 U.S. 33, 51 (1990). However, this case presents an unusual circumstance in which Defendant Gallegos, acting on behalf of the state institution of the Eighth Judicial District Attorney's Office, has repeatedly testified that he continues to believe Red Hill Road is public, and that his conduct was proper. *See, e.g., doc. 160-1* at 13, Gallegos Dep. 171:20-172:12 (explaining that it "wasn't relevant to [his] analysis . . . whether [Red Hill Road] was a listed State highway or a county road" because "[b]ased on [his] reading of the statute and the case law, [he] believed it was a public road. Still do[es]."); *doc. 216-1* at 25, Gallegos Dep. 185:12-21 (asserting that he continues to believe he has the authority to make the determination that Red Hill Road is public, and to act on that determination by opening the road to public access); *id.* at 184:21-185:9 ("I have resolved in favor of public access, pending any other kind of option he has. He still has the option to get that determination [that Red Hill Road is private] made, and that's what he's doing. I haven't foreclosed him from anything. He still uses his property. Now, he may have to get down and open the gate and close the gate. But guess what? That happens all over America. . . . All I have done is ensure that, as a public officer, in my opinion, based on the law and based on the facts, that the public continues to use that road, unless or until something else is done about it."). Therefore, based on Defendant Gallegos's own testimony, the Court is hard-pressed to

find that the District Attorney's Office is ready, willing, and able to remedy any similar deprivations of Plaintiff's due process rights with regard to Red Hill Road in the future.

As noted above, the most important factor for the Court to consider in determining whether to grant injunctive relief is whether "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. . . . To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance, and, in some cases, the character of the past violations." *Roe*, 124 F.3d at 1230; *W.T. Grant Co.*, 345 U.S. at 633. Although past violations alone do not "show a present case or controversy regarding injunctive relief[,]" nonetheless, past wrongs are considered relevant evidence "bearing on whether there is a real and immediate threat of repeated injury." *Lyons*, 461 U.S. at 102 (citations and internal quotations omitted).

With regard to the character of the past violations, as the Court explained in its Memorandum Opinion and Order, the determination that Defendant Gallegos failed to provide due process to Plaintiff was not a close call given the facts of this case. In particular, the Court found that Defendant Gallegos's pre-deprivation investigation fell short of what would be necessary to satisfy due process without notice and a hearing in part due to his "alarming lack of knowledge regarding the legal and factual basis upon which he made his decision[,]" and further found that Defendant Gallegos's pre-deprivation letters sent to Plaintiff were "woefully inadequate" to serve as sufficient

notice.  *Doc. 209* at 35, 40 (citing *doc. 160-1* at 12-13, Gallegos Dep. 154:10-157:16; 171:20-172:15; *doc. 160-1* at 18).

Defendant Gallegos is still the District Attorney for the Eighth Judicial District of New Mexico, and he has professed an unyielding belief in the propriety of his past unconstitutional actions.  He has repeatedly defended his actions as valid exercises of his authority as a District Attorney.  *See, e.g.*, *doc. 160-1* at 14, 15, Gallegos Dep. 174:23 – 175:2; 179:8-13 (arguing that state statutory and constitutional law provides the "legal source of [his] authority to make the decision that Red Hill Road is a public road[,]" and asserting that he had the authority to open Red Hill Road because his prosecutorial discretion "authorizes [him] to take whatever action [he] believe[s] is necessary, legal, to prosecute and defend the State or the county, [his] district."); *doc. 216-1* at 10, Gallegos Dep. 96:10-15 (asserting that Red Hill Road is "a public road[,]" that "placing of an obstruction" across a public road "is a violation of the law," and that, therefore, he "had every right to go up there and remove the obstruction.").  Moreover, Defendant Gallegos has confirmed that he would "not exclude" the possibility of taking the same action again if faced with the same evidence, and that he still believes Red Hill Road to be public.  *Id.* at 27, Gallegos Dep. 193:2-4; *doc. 160-1* at 13, Gallegos Dep. 172:10-12. And, most vital to Plaintiff's claim, Defendant Gallegos continues to argue that "public access to the White Peaks Recreational area" via Red Hill Road "should be maintained . . . until the state [quiet title action] is concluded[,]" evincing a resistance to the Court's

40

finding that Plaintiff has a sufficient property interest in Red Hill Road to entitle him to

pre-deprivation process before the state can force it to be opened to public access. *Doc.*

*220* at 9.[15]

Further, the Court finds that state law does not provide an adequate remedy

while Plaintiff's quiet title claim remains unresolved. Although Plaintiff can bring a

state law trespass claim against Defendant Gallegos in the event that he trespasses on

undisputedly private property, it is unlikely that Plaintiff would be able to prevail on

such a claim based solely on Defendant Gallegos's presence on Red Hill Road prior to a

final resolution of the quiet title claim. *See* N.M.S.A. § 30-14-1.1(D) (requiring a showing

that a person "enter[ed] upon the lands of another" before a civil trespass claim can

stand); *Padilla v. Lawrence*, 685 P.2d 964, 971 (N.M. Ct. App. 1984) (trespass at common

law requires a "direct infringement of another's right of possession."). And, if

Defendant Gallegos were to cut a lock securing any gate that Plaintiff may place across

Red Hill Road while Plaintiff maintains a sufficient property interest in the road,

Plaintiff may run into the barrier of sovereign immunity if he were to bring a tort claim

against Defendant Gallegos, depending on whether a state court determines that

---

[15] Defendant Gallegos argues that he "has taken no action to interfere with Plaintiff's rights since August, 2011." *Doc. 220* at 9. However, this argument ignores (1) that Defendant Gallegos advised local law enforcement officials—including Colfax County Sheriff Patrick Casias, who dispatched a deputy sheriff to destroy the lock on Plaintiff's Red Hill Road gate on September 10, 2011—to treat the road as public (*see doc. 40-1* at 3), and, (2) that apparently Plaintiff has not maintained a gate across Red Hill Road since that second occasion when it was forcibly unlocked and opened. Defendant Gallegos's continuing insistence that his personal adjudication of the road status has the force of law, and his instructions to law enforcement officials to that effect, together present a "cognizable danger of recurrent violation[.]" *Roe*, 124 F.3d at 1230.

Defendant Gallegos was acting within the scope of his duty as a district attorney and was not acting as a law enforcement officer. *See* N.M.S.A. §§ 41-4-4, 41-4-12. Therefore, even viewing the facts in the light most favorable to Defendant Gallegos, the Court finds that irreparable harm will result absent an injunction prior to a final ruling on Plaintiff's quiet title claim.

        b.  <u>A remedy in equity is warranted considering the balance of hardships between the parties.</u>

In his Amended Complaint, Plaintiff asserts that he has sustained damages including the "the diminution in value of Plaintiff's property, and the disruption of his efforts to manage game, fish and livestock, and prevent or limit trespass and poaching on the Stanley Ranch[.]" *Doc. 21* at 6. Defendant Gallegos acknowledged in his deposition that, now that Plaintiff's gate has been unlocked and Red Hill Road is accessible to the public, "it makes it more difficult for [Plaintiff] to control access to his property" because people using the road "may drive into his pasture" and "may litter[.]" *Doc. 216-1* at 26, Gallegos Dep. at 187:2-22. While these hardships are perhaps not overwhelming, Defendant Gallegos makes no attempt in his Response to argue that he will suffer any hardship should the Court grant Plaintiff injunctive relief, despite offering several other factor-based arguments to contend that injunctive relief should not be granted. *See doc. 220* at 8-9. Nonetheless, viewing the facts in the light most favorable to Defendant Gallegos, the Court finds that the proposed injunction crafted by Plaintiff would indeed cause undue hardship to Defendant Gallegos with respect to

his exercise of prosecutorial discretion.  *See supra* note 13.  Therefore, the Court has been careful to formulate an injunction that does not interfere with Defendant Gallegos's prosecutorial decision-making, or that might otherwise hinder his ability to engage in the formal judicial process to prosecute suspected criminal offenses.

Additionally, in his Response to the present Motion, Defendant Gallegos offered "to stipulate to the entry of a preliminary injunction restricting him, personally, from taking any action in unlocking any obstruction Stanley erects at the subject gate."  *Doc. 220* at 3.  The injunctive relief crafted by the Court is quite similar to Defendant Gallegos's proffered stipulation, broadened most significantly by the requirement that Defendant Gallegos not direct others to do what he is prohibited from doing himself. This reality further bolsters the Court's finding that Defendant Gallegos will not face undue hardship in complying with the injunction.

           c.   The public interest would not be disserved by this injunction.

Finally, the Court finds that the injunction, as formulated above, will not adversely affect the public interest.  Significantly, the Court has been careful to allow the removal of any obstruction from Red Hill Road where a public safety concern may warrant such removal.  *See, e.g., Sargent v. United States*, No. CIV.A.08-3887, 2008 WL 3154761, at *10 (E.D. La. Aug. 5, 2008) (finding that the public interest outweighs a claimant's due process interest in defending his claim to a disputed piece of realty where there is an issue of public safety to consider, and thus denying a preliminary

injunction).  Therefore, the injunction will not reach such state action as would be necessary to protect the public interest where there is an exigent circumstance requiring public use of the road.

Defendant Gallegos argues that limiting public access to the White Peaks Recreational Area is adverse to the public interest.  *Doc. 220* at 9.  Notably, Plaintiff asserted in his Amended Complaint that he had "provided alternative access to the New Mexico Department of Game and Fish across a portion of his property for hunters with permits issued by that Department to reach certain adjacent public lands in the area of White's Peak."  *Doc. 21* at 4.  However, this fact is not undisputed.  *See doc. 29* at 2 (Defendant Gallegos denying these allegations in his Answer).  Regardless of whether some or all members of the public have alternative access to certain White Peak recreational areas, the Court's injunction makes no statement on the public or private nature of the road.  It simply requires Defendant Gallegos to respect Plaintiff's due process rights in connection with the road prior to a final determination regarding Plaintiff's quiet title claim.  As the Tenth Circuit has noted, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (citations omitted).  Therefore, the Court finds that Plaintiff has satisfied the fourth injunctive relief factor.

Ultimately, Plaintiff has prevailed in showing that Defendant Gallegos violated the Constitution by implementing his own determination that Red Hill Road is public

without due process, and interfering with Plaintiff's property rights in so doing.  *See doc. 209* at 33-47.  The core purpose of the *Ex parte Young* doctrine is to provide injunctive relief against state officials who violate federal law, where Eleventh Amendment immunity otherwise precludes relief that would vindicate the rights of claimants harmed by those violations.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984) ("[T]he *Young* doctrine has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'") (quoting *Young*, 209 U.S. at 160).  In the circumstances of this case, the Court finds a grant of injunctive relief necessary to vindicate Plaintiff's federal rights during the liminal period before the status of Red Hill Road is finally determined by the state court.

## B.    Supplemental Jurisdiction

The Court may decline to exercise supplemental jurisdiction over a state law claim if (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the federal claims in the case, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  *Nielander v. Bd. of Cty. Comm'rs of Cty. of Republic, Kan.*, 582 F.3d 1155, 1172 (10th Cir. 2009) (citing the factors set forth in 28 U.S.C. § 1367(c)).  In the Tenth Circuit, when the third above-listed scenario arises, courts "may, and usually should, decline to exercise jurisdiction

45

over any remaining state claims." *Smith v. City of Enid City Comm'n*, 149 F.3d 1151, 1156

(10th Cir. 1998). Further, the Court must consider the principles of "judicial economy,

convenience, fairness, and comity" in determining whether it is appropriate to exercise

supplemental jurisdiction. *Nielander*, 582 F.3d at 1172 (quoting *Carnegie–Mellon Univ. v.

Cohill*, 484 U.S. 343, 350 (1988)). Ultimately, whether to exercise supplemental

jurisdiction is a decision left to the Court's discretion. *City of Chi. v. Int'l Coll. of

Surgeons*, 522 U.S. 156, 172–73 (1997); *see also Salazar v. San Juan Cty. Det. Ctr.*, 301 F.

Supp. 3d 992, 1001 (D.N.M. 2017) ("In circumstances where the supplemental

jurisdiction statute may support supplemental jurisdiction, the district court retains

discretion to decline to exercise that jurisdiction.").

Here, having dismissed or otherwise resolved all federal claims in this matter,

the Court declines to exercise jurisdiction over the remaining state law claims. Several

considerations counsel in favor of this decision. First, now that Plaintiff's federal claim

for injunctive relief has been resolved, there remain no live federal issues for the Court

to decide. Therefore, the third scenario set forth in 28 U.S.C. § 1367(c)(3) justifying

denying supplemental jurisdiction—"the district court has dismissed all claims over

which it has original jurisdiction"—applies here. *See Role Models Am., Inc. v. Penmar

Dev. Corp.*, 394 F. Supp. 2d 121, 136 (D.D.C. 2005), *aff'd*, 216 F. App'x 5 (D.C. Cir. 2007)

(unpublished) (explaining that declining to exercise supplemental jurisdiction is

appropriate "if all federal-question claims have been dismissed **or otherwise resolved**.") (emphasis added).

Second, although the Court continues to maintain jurisdiction over the injunction issued herein, the remaining state law claims substantially predominate over the federal injunctive relief claim precipitating that injunction. These circumstances, too, justify denying supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(2).

Third, and relatedly, the remaining state law claims are primarily comprised of Plaintiff's Second Claim for Relief in his First Amended Complaint, alleging numerous violations of the New Mexico constitution, arising under the New Mexico Tort Claims Act ("NMTCA"). *See doc. 21* at 7; *doc. 216* at 17-18. While NMTCA claims are not typically complex or novel, the unique factual circumstances of this case render the state law issues both complex and novel here. Specifically, in order to resolve whether Defendant Gallegos is entitled to sovereign immunity pursuant to N.M.S.A. § 41-4-4, the Court would be required to decide whether Defendant Gallegos was acting within the scope of his duty as a public employee. Further, assuming the Court decided in Defendant Gallegos's favor on that question, the Court would then have to determine whether the immunity waiver set forth in N.M.S.A. § 41-4-12, which, as written, applies only to "law enforcement officers while acting within the scope of their duties[,]" could apply to a District Attorney who was exercising police-like powers. Consequently, these state law claims also "raise[] a novel or complex issue of State law," constituting

yet another basis to decline to exercise supplemental jurisdiction over them. 28 U.S.C. § 1367(c)(1). The Court is reticent to address such issues of first impression where the interpretation of state law is involved.

Fourth, notwithstanding the statutory considerations arising under § 1367(c), Defendant Olona argues that the broader principles of judicial economy and fairness demand that the Court retain supplemental jurisdiction over his state-law counterclaim for malicious abuse of process. However, despite the age of this litigation, there has been no dispositive briefing regarding—or any other legal or factual development of— any of the remaining state law claims in this matter, including Defendant Olona's counterclaim. Therefore, the parties would still be required to develop the factual record as it relates to the state law claims before this Court, and Defendant Olona has not pointed to any substantial burden that would result from having to refile his counterclaim in state court. *See doc. 218* at 5 (explaining that, "[a]t a minimum, Mr. Olona will be required to re-draft his counterclaim (now asserted as a complaint), file it, [] pay the concomitant filing fee[, and] educate a new judge on the lengthy factual history of this case."). Moreover, Defendant Olona demanded a jury trial in connection with his counterclaim. *Doc. 33* at 8. Therefore, barring a successful dispositive pre-trial motion,[16] Defendant Olona would bear the burden of educating a jury as to the factual history of this case, regardless of whether the trial proceeded in federal or state court.

---

[16] Notably, Defendant Olona has not sought summary judgment on his counterclaim in the more than six years since this case was filed.

The Court is thus unpersuaded that considerations of judicial economy and fairness weigh heavily in Defendant Olona's favor here, and they certainly do not outweigh the other considerations outlined above regarding the novelty of the state law issues, the substantial predominance of the state claims over the federal injunctive relief granted in this case, and the fact that no federal issues remain to be resolved.

Fifth, as to Defendant Olona's counterclaim for malicious abuse of process, it is at least questionable whether that claim arises from the same nucleus of operative facts, such that the Court may not have supplemental jurisdiction over that particular claim pursuant to § 1367(a) at all. *See Walker v. THI of N.M. at Hobbs Ctr.*, 803 F. Supp. 2d 1289, 1324-26 (D.N.M. 2011) (finding that a malicious abuse of process counterclaim does not derive from the same nucleus of operative fact as the claims set forth in a complaint, because the set of facts underlying such a counterclaim "relate to [the plaintiff's] actions in filing her Complaint and amended Complaints, and her actions in the litigation" rather than to the circumstances preceding and giving rise to the litigation). *But see Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1266 (10th Cir. 2003) (suggesting that a similar Utah abuse of process claim could properly be brought as a counterclaim in a federal-question case, although the question presented pertained to Article III standing rather than § 1367(a)).[17]  While the Court need not decide that issue

---

[17] The *Walker* court found *Ashley Creek* distinguishable because the Tenth Circuit "was addressing Article III jurisdiction, and was not conducting an analysis of whether a counterclaim arose from a common nucleus of operative fact[.]"  803 F. Supp. 2d at 1326.

here, this jurisdictional question is yet another mass tipping the scale in favor of declining to exercise supplemental jurisdiction.

Accordingly, the Court GRANTS Plaintiff's request that the Court decline to exercise supplemental jurisdiction over all remaining state law claims in this case, including Plaintiff's NMTCA claims and state statutory trespass claims against Defendant Gallegos, as well as Defendant Olona's counterclaim for malicious abuse of process.

## V.    CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment Regarding Claims for Injunctive Relief and Memorandum of Law Regarding Supplemental Jurisdiction Over State Law Claims (*doc. 216*).

In particular, the Court **GRANTS** the following injunction to Plaintiff on the basis of its findings that state official Defendant Gallegos, acting in his official capacity, violated Plaintiff's constitutional rights:

> Until the state court issues a final ruling regarding whether Red Hill Road is public or private, and absent an exigent public safety concern, Defendant Donald Gallegos is hereby enjoined from interfering with any locked gate or other barrier that Plaintiff may install across Red Hill Road to restrict or prevent public access to the road where it traverses his private property. During the same time period, Defendant Gallegos is further enjoined from directing or instructing any third parties, including law enforcement officials, to engage in any such interference. Notwithstanding the foregoing, no action authorized pursuant to a lawful court order or warrant signed by a judge of a court of record shall

constitute a violation of this injunction if the application to the judge for such an order or warrant was accompanied by a copy of this Order and the Memorandum Opinion and Order (*doc. 209*).  Moreover, in no event shall a decision to bring criminal charges related to any obstruction constitute a violation of this injunction.  This injunction shall terminate once the state court has issued a final decision (as defined in 28 U.S.C. § 2244(d)(1)(A)) in the pending quiet title action regarding whether Red Hill Road is public or private.

Insofar as Plaintiff's requested injunctive relief differs from the injunction set forth above, Plaintiff's Motion is **DENIED**.  The Court shall retain jurisdiction over any issues pertaining to the above injunction until the date it dissolves by its own terms.  *See Battle v. Anderson*, 708 F.2d 1523, 1539 n.4 (10th Cir. 1983) ("If an injunction is to be effective, a court must retain continuing jurisdiction to enforce and modify the terms of its orders.").[18]

---

[18] Notwithstanding the Court's continuing jurisdiction to enforce the injunction, the Court will enter a separate document pursuant to Rule 58(a) reflecting both its judgment granting injunctive relief as well as its judgment dismissing the remaining state law claims, and will thereafter administratively close the case to reflect the finality of these judgments.  *See* 28 U.S.C. § 1292(a)(1) (injunctions are appealable to the courts of appeals); Fed. R. Civ. P. 54(a) (defining a "judgment" as "any order from which an appeal lies.").

Moreover, the Court **GRANTS** Plaintiff's Motion insofar as it requests that the Court decline to exercise supplemental jurisdiction over the remaining state law claims in this case. The Court finds that the pertinent factors set forth in 28 U.S.C. § 1367(c) weigh against the exercise of supplemental jurisdiction. Therefore, Plaintiff's Second, Third, and Fourth Claims for Relief against Defendant Gallegos, as well as Defendant Olona's counterclaim against Plaintiff for malicious abuse of process, are hereby **DISMISSED WITHOUT PREJUDICE.**

    **IT IS SO ORDERED**.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**