IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAVID N. STANLEY,

    Plaintiff,

v.                                         Civ. No. 11-1108 GBW/JHR

DONALD GALLEGOS, *et al.*,

    Defendants.

## **ORDER DENYING DEFENDANT'S MOTION TO ALTER OR AMEND**

THIS MATTER comes before the Court on Defendant's Motion to Alter or Amend the Court's Order with Supporting Memorandum of Law. *Doc. 232.* Having reviewed the Motion and the attendant briefing (*docs. 238, 248*), the Court will DENY the Motion for the reasons that follow.

    **I.**    **APPLICABILITY AND GROUNDS FOR RULE 59 RELIEF**

Defendant asks the Court to alter its Memorandum Opinion and Order entered on March 8, 2018 (*doc. 209*) and its Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment entered on August 9, 2018 (*doc. 223*). Plaintiff contends that the motion should be denied as to the March 8, 2018 order because it cannot be the subject of a Rule 59(e) motion. *See doc. 238* at 2-3. As the Court will deny the motion on the merits, it will presume the propriety of a Rule 59(e) to address both challenged orders. The grounds for granting a Rule 59(e) motion are "(1) an intervening

change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 610 (10th Cir. 2012). Courts should not grant relief under Rule 59(e) where the movant seeks only to "revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citation omitted).

## II. THE COURT DID NOT MISAPPREHEND DEFENDANT'S POSITION

Defendant first argues that the "Court misapprehended the facts or Defendant's position in finding an 'ongoing violation' of federal law…." *Doc. 232* at 3. This argument relates to the Court's finding that Plaintiff's allegations were "sufficient to demonstrate the ongoing nature of Defendant Gallegos's due process violation." *Doc. 223* at 18. The Court based this finding on the Defendant Gallegos's unrecanted written threats to Plaintiff and his failure to commit to providing due process to Plaintiff before removing any new obstructions. *Id*. at 16-18. Defendant now claims that he "did agree not to remove any gate erected by Plaintiff until such time as the state court ruled in the quiet title suit." *Doc. 232* at 5 (citing *doc. 220*, Ex. 2). He did no such thing.

Most glaringly, the evidence to which Defendant points does not exist as cited. *See doc. 220* (no Exhibit 2 attached). In fact, it appears that the evidence upon which Defendant relies is an affidavit filed a month after the August 9, 2018 order. *See doc. 231*, Ex. 2. Indeed, the affidavit was signed almost four weeks after the order was filed.

2

*See id*. at 4.  In that affidavit, Defendant avers that "prior to the Court's [August 9th] decision I had agreed not to interfere with any gates erected upon Red Hill Road owing to this pending federal case and because of the state court quiet title action filed by the Plaintiff."  *Id*. at 3.  Notably, Defendant does not indicate with whom he "agreed" to this restraint.  Certainly, he never proclaimed such an agreement to the Court or Plaintiff until after this Court ruled and indeed after the state trial court ruled that Red Hill Road was public.  *See doc. 231*, Ex. 1 (trial court findings filed August 29, 2018); Ex. 2 (affidavit signed September 4, 2018 and filed September 6, 2018).

Nonetheless, Defendant believes that the Court misapprehended his position because he had offered to stipulate to a preliminary injunction.  *See doc. 232* at 4-6.  In his Response to Plaintiff's Motion for Summary Judgment, Defendant did "offer[] to stipulate to the entry of a preliminary injunction **restricting him, personally, from taking action in unlocking** any obstruction Stanley erects at the subject gate."  *Doc. 220* at 3 (emphasis added).  First, this offer was made expressly in connection with Defendant's request for a stay of any decision pending the state court ruling in the quiet title action.  *Id*. at 2-3.  This contingent offer was a far cry from a clear declaration that Defendant would unilaterally and unconditionally agree to provide due process to Plaintiff should he erect an obstruction on Red Hill Road pending a state court ruling. Second, this offer seemed carefully crafted to permit Defendant to order others to remove any obstruction erected by Plaintiff.  *Compare doc. 224* at 1 ("During the same

3

time period, Defendant Gallegos is further enjoined from directing or instructing any third parties, including law enforcement officials, to engage in any such interference."). This distinction is particularly important in the instant case where the second removal of the gate was not personally completed by Defendant Gallegos but pursuant to his earlier instructions. When the Court entered its August 9, 2018 order, it was aware of his contingent offer of a stipulated preliminary injunction, but these issues along with a conspicuous lack of any pronouncement from Defendant Gallegos that he would honor due process going forward did not preclude the existence of an ongoing violation.

Defendant also believes that the Court misapprehended his position because it cited to his argument on "public interest" in support of its finding regarding an "ongoing violation." *See doc. 232* at 4-6. In its August 9, 2018 order, the Court noted that Defendant "still proclaims that public use of Red Hill Road 'should be maintained, at least until the state suit is concluded.'" *Doc. 223* at 18 (quoting *doc. 220* at 9). Defendant correctly notes that the quote is taken from his "argument that the public interest militated in favor of denying injunctive relief." *Doc. 232* at 5. He claims therefore it "was not intended to imply that Defendant would take any further action in interfering with Plaintiff's asserted interests in the road pending the state court proceeding." *Id*. Regardless of the subjective intent, Defendant's argument indeed supports this implication. The Court was considering enjoining Defendant Gallegos's conduct with respect to obstructions Plaintiff may place on Red Hill Road. In opposing

4

an injunction to his own conduct, Defendant's argument that the public use of the road must be maintained certainly implies that the Court should leave him free to remove any such obstructions as he sees fit. Put another way, if Defendant Gallegos did not intend to remove future obstructions, then enjoining him from doing so would not impact the public use of the road whatsoever.

In any event, the Court did not misapprehend Defendant's position when ruling on the "ongoing violation" issue. As the Court stated, at no point during the almost seven years of litigation did Defendant Gallegos "sway[] from the threatening position taken in the letters he sent to Plaintiff." *Doc. 223* at 18. In fact, as explained in the undisputed material facts, "Defendant Gallegos continues to believe that it was unnecessary to obtain a court order authorizing him to open the gate across Red Hill Road, and that he had the authority to decide that Red Hill Road was public[.]" *Doc. 223* at 11. Moreover, "Defendant Gallegos testified that he would not exclude the possibility of taking the same action, under the same circumstances, to open up a road he believes is public based on identical evidence." *Id*. at 12; *see also doc. 220*, Ex. 1 (Defendant Gallegos's assertion that it was urgent that any gate be removed quickly). His belated affidavit and disavowal of the implications of his public interest argument are insufficient to warrant relief under Rule 59(e).

## III. STATE DISTRICT COURT RULING IS NOT NEWLY DISCOVERED EVIDENCE

On August 29, 2018, State District Judge Sarah Backus entered Findings, Conclusions and Decision on the state quiet title action. *Doc. 253*, Ex. 1. In her decision, she found that a "preponderance of evidence supports the conclusion that the segments of Red Hill Road that cross the Stanley Property … constitute a public road." *Id*. at 47. Defendant argues that this ruling constitutes newly discovered evidence because it "means that Plaintiff lacked standing to sue for a violation of due process because he did not possess a significant (or any) property interest in Red Hill Road." *Doc. 232* at 6. However, when property is disputed, the eventual losing party's right to due process pending resolution of the dispute is not retroactively extinguished upon a ruling. *See Fuentes v. Shevin*, 407 U.S. 67, 87 (1972); *Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed[.]") The question before this Court was whether Plaintiff had a legitimate claim of entitlement to Red Hill Road when Defendant Gallegos acted to remove the gates Plaintiff placed across it as it entered his property. This Court concluded that he did. *See doc. 209* at 28-33. While Judge Backus has ruled, under a preponderance of the evidence standard, that the road was public, nothing in her order persuades this court that Plaintiff's earlier claim to the

6

contrary was illegitimate.[1] On this point, Defendant argues that "the state court determined that not only did Plaintiff lack any interest in Red Hill Road, but that perhaps he 'knew or should have known' that he lacked said interest by prescription[.]" *Doc. 232* at 7. Defendant fails to provide any citation to this "determination," but the Court assumes he refers to the following finding: "The State presented sufficient evidence to demonstrate that Plaintiff David Stanley and his predecessors in interest knew, or should have known, that members of the public were traveling on the claimed roads across the Stanley Property." *Doc. 231*, Ex. 1 at 14. When viewed in its entirety, this finding does not support the conclusion that Plaintiff Stanley lacked a legitimate claim of entitlement to Red Hill Road. The state court was merely making a factual determination about Plaintiff's (or his predecessors-in-interest's) knowledge of people traveling through his property – not his knowledge about the invalidity of his property claim.

The state court decision, whichever way it might turn out, was fully anticipated by all concerned. *See doc. 213*. Nothing in its text constitutes newly discovered

---

[1] In fact, the opinion notes that New Mexico Department of Game and Fish "entered into a series of Open Gate agreements with David Stanley from 2008 through 2011, through which the Department made payments to Stanley in exchange for his agreement not to impede public access to portions of roadways crossing the Stanley Property." *Doc. 253*, Ex. 1 at 33. The existence of such agreements strongly supports the conclusion that, notwithstanding the state trial court ruling against him seven years later, Stanley had a legitimate claim to entitlement to impede access through his property along Red Hill Road when Defendant Stanley acted in 2011.

evidence about Plaintiff's right to due process back in 2011.  As such, it does not warrant relief under Rule 59(e).

## IV. DEFENDANT'S ARGUMENT REGARDING THE COURT'S "CLAIM OF ENTITLEMENT" ANALYSIS CANNOT QUALIFY FOR RULE 59 RELIEF

Defendant contends that the Court neglected to perform the requisite inquiry concerning whether Plaintiff had a legitimate claim of entitlement to Red Hill Road to qualify for due process.  *See doc. 232* at 8-12.  While the Court recognized that state law controls this analysis, it concluded that, under the relevant facts, Plaintiff Stanley possessed a legitimate claim.  *See doc. 209* at 32-33.  Defendant now argues that the Court should have analyzed the Plaintiff's claim of entitlement "in light of the property interest and the governmental interest at stake. . . . Moreover, the Court did not focus Its inquiry 'on the degree of discretion given to the decisionmaker,' with respect to the nature of the property interest at stake."  *Doc. 232* at 9 (citations omitted).  Unfortunately, Defendant has never made this argument before nor previously cited the authority upon which he now relies.  Notably, this argument was missing from his Motion for Summary Judgment (*doc. 115*), his Reply  (*doc. 130*), his Supplemental Briefing (*doc. 196*), his Supplemental Reply Brief (*doc. 202*), and his Response to the Motion for Summary Judgment Regarding Claims for Injunctive Relief (*doc. 220*).  None of the authority cited by Defendant is new such that it would qualify as an "intervening change in the controlling law."  *Monge*, 701 F.3d at 610.  Instead, Defendant is attempting to "advance arguments that could have been raised in prior briefing."

*Servants of the Paraclete*, 204 F.3d at 1012.  Moreover, having reviewed Defendant's arguments that a District Attorney is an authorized decisionmaker with discretion to unilaterally adjudicate property disputes where access to state trust lands are implicated, the Court is unpersuaded.  As such, there is no "need to correct clear error or prevent manifest injustice" by altering the judgment.  *Monge*, 701 F.3d at 610.

V. CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's Motion to Alter or Amend the Court's Order with Supporting Memorandum of Law (*Doc. 232*).

**IT IS SO ORDERED**.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**